**Butera v. Atlantic Richfield Company**

*John C. Butera*, for plaintiff.

*Meyer E. Maurer* and *Ronald H. Israelit*, for defendant.

HONEYMAN, J., June 26, 1973.—Plaintiff filed a complaint in assumpsit on September 7, 1971, in his own right and as a member of a class against the Atlantic Richfield Company and same was served on September 27, 1971. Defendant filed preliminary objections to the complaint on October 15, 1971. The preliminary objections were briefed and argued before the court en banc on June 12, 1972. At that time, plaintiff expressed a willingness to file an amended complaint and did so on July 6, 1972. On this original submission of the case to the court, this left only for consideration defendant's demurrer. On July 24, 1972, defendant filed preliminary objections to the amended complaint. These encompassed both a motion for a more specific pleading as well as a demurrer. These were submitted to the court for disposition on additional briefs only.

Plaintiff has brought a class action under the Goods and Services Installment Sales Act of October 28, 1966, Spec. Sess., P. L. 55, 69 PS §1101-2303, seeking to recover finance charges billed and collected by ARCO from their credit card holders that were in excess of the maximum allowed by such act, viz., 1¼ percent per month or 15 percent per year, as well as reasonable attorneys' fees and costs.

Plaintiff brings the action as a credit card holder of ARCO and a member of the class of ARCO credit card holders in Pennsylvania. There are three reasons why the complaint must be dismissed as a class action. The first reason is that plaintiff does not allege that all

ARCO credit card holders in Pennsylvania were billed for finance charges. Obviously, some ARCO credit card holders paid their bills in full at all times and made no use of the installment sales agreement. The second reason is that the complaint does not allege that the ARCO credit card holders bought the goods primarily for family, personal or household purposes as required by 69 PS §1201(1)! " 'Goods' means tangible chattels bought for use primarily for personal, family, or household purposes." Businesses, large and small, use credit cards to obtain consumer goods and services. Plaintiff's complaint does not differentiate between business users of ARCO credit cards and personal users of ARCO credit cards. Only ARCO credit card holders, who purchase for family or personal use, are protected by the Goods and Services Installment Sales Act. The third reason that a class action will not lie in this case is that the class defined in the complaint includes all Pennsylvania ARCO credit card holders. Section 2205 of the act provides that:

"An action on a contract under the provisions of this act shall be commenced in the county in which the contract was in fact signed by the buyer, in the county in which the buyer resided at the time the contract was entered into, in the county in which the buyer resides at the commencement of the action, or in the county in which the goods purchased pursuant to such contract have been so affixed to real property as to become a part of such real property."

Plaintiff argues that this provision should not apply in order to avoid a multiplicity of suits in the various judicial districts of the Commonwealth. However, the Supreme Court of Pennsylvania stated in Era Co. v. Pgh. Consol. Coal Co., 355 Pa. 219 (1946) on page 220:

" 'Where a remedy or method of procedure is pro-

vided by an Act, its provisions shall be strictly pursued and exclusively applied.' "

In accord, Commonwealth v. Lukens Steel Co., 402 Pa. 304 (1961). Thus venue is established for plaintiff based upon his allegation of residence within the county, but it is not established for any other person's claim which he purports to embrace in his complaint by pleading that he brings this action as a member of a class. On the other hand, if we accepted plaintiff's contention that he should be permitted to maintain this suit as a class action, then he should be barred by reason of a prior pending class action in Chester County. Filed herein is a true and correct copy of the record of Kressley v. Atlantic Richfield Co., January term, 1972, no. 30, which had been originally commenced by complaint filed August 18, 1970, in Philadelphia County, but was subsequently certified by order dated December 28, 1971, to Chester County Court of Common Pleas because Judge Bradley, of the Court of Common Pleas of Philadelphia County, concluded that venue lay in Chester County. There are presently pending for decision preliminary objections to the complaint therein. A review of the pleadings in that case clearly shows that the suit is sought to be maintained as a class action under the same act as is the instant suit. Therefore, if a class action can be maintained on the basis contended by this plaintiff, then his status as a claimant was effectively protected as a member of the class asserted by plaintiff in Chester County, and the prior pendency of that action would support a preliminary objection to the complaint based thereon under Pennsylvania Rule of Civil Procedure 1017(b)(5).

Pennsylvania Rule of Civil Procedure 2230 governs class actions in the courts of this Commonwealth. It

was based upon the original Fed. R.C.P. 23 which has since been drastically amended in 1966. There has been relatively little use made of Pa. R.C.P. 2230. As a result, counsel cite Federal cases with respect to questions of identifiability and homogenity of the alleged class, notice to the members of the class, and manageability of the action. By reason of what has been said heretofore to support the action of the court in the order which follows this opinion sustaining the preliminary objections and dismissing the complaint with prejudice, little need be added with respect to the maintenance of the suit as a class action. The two Federal cases on which plaintiff especially relies are: Eisen v. Carlisle & Jacquelin, 391 F. 2d 555 (1968), and Dolgow v. Anderson, 43 F.R.D. 472 (E.D. N.Y. 1968). The Eisen case involved a remanding of the record by the United States Court of Appeals for the Second Circuit to the District Court for further proceedings with respect to notice and manageability. It has now been reappealed to the Circuit Court, and Judge Medina, in an exhaustive opinion on class actions filed May 1, 1973, at September term, 1972, nos. 341, 381, dismissed the class action therein primarily because the size of the class made the giving of notice impossible and because the further maintenance of the suit would be clearly unmanageable. The effect of this opinion is to effectively reverse any holding in the first Eisen decision and to repudiate any holding in the Dolgow case. If Judge Medina's opinion is representative of the judicial thinking on class actions by the Federal courts, then class actions for other than small groups are at an end federally. This court is of the opinion that they should also be similarly drastically limited in Pennsylvania. We adopt the following cogent observations of Judge Medina as further support for our disposition herein:

"Class actions have sprouted and multiplied like the leaves of the green bay tree. No matter how numerous or diverse the so-called class may be or how impossible it may be ever to compensate the individual members of the class, a champion steps forth. Thus class actions have been brought 'on behalf of all subscribers of business telephones in New York County, all Master charge credit card holders similarly situated, all consumers of gasoline in a given state or states, all homeowners in the United States, and even all people in the United States.' So far as we are aware not a single one of these class actions including millions of indiscriminate and unidentifiable members has ever been brought to trial and decided on the merits. But the preliminary procedures, including the preliminary mini-hearing on the merits, such as those conducted by Judge Tyler in order to decide whether or not this case was a proper class action, and the huge and unavoidable expense of producing witnesses and documents pursuant to discovery orders, have brought such pressure on defendants as to induce settlements in large amounts as the alternative to complete ruin and disaster, irrespective of the merits of the claim.

"The *'in terrorem'* effects of the innovations described in Dolgow have been highly praised by those who invented or applied them. But Professor Milton Handler, whose Annual Antitrust Review has for many years brought his expertise in Trade Regulation and, we are happy to say, some entertainment to the members of the Association of the Bar of the City of New York, and to the members of the Bench and Bar in general, minces no words. He calls these procedures 'legalized blackmail.' There is reason to believe that the practical effect of these procedures, and the fact that possible recoveries run into astronomical amounts, generate more leverage and pressure on defendants to

settle, even for millions of dollars, and in cases where the merits of the class representative's claim is to say the least doubtful, than did the old-fashioned strike suits made famous a generation or two ago by Clarence H. Venner.

"And yet, even if amended Rule 23 furnishes no satisfactory solution in situations where immense numbers of consumers have been mulcted in various ways by illegal charges, it would seem that some means should be provided by law for the redress of these wrongs to the community and to society as a whole. The numerous decisions by courts in these class action cases have at least exposed the lack of adequate remedy under existing laws. From our extensive study of the whole situation in working on this Eisen case it would seem that amended Rule 23 provides an excellent and workable procedure in cases where the number of members of the class is not too large. It seems doubtful that further amendments to Rule 23 can be expected to be effective where there are millions of members of the class, without some infringement of constitutional requirements."

## ORDER

And now, June 26, 1973, the preliminary objections to the amended complaint are sustained and the amended complaint is dismissed with prejudice, except as to the individual claim of plaintiff against defendant as to which plaintiff is granted leave to file a second amended complaint within 20 days of receipt of copy of this opinion and order; upon his failure to file such second amended complaint, the amended complaint is dismissed in its entirety and the prothonotary is directed to enter judgment for the defendant.