## Commonwealth *v*. Lukens Steel Company, Appellant.

Argued November 22, 1960.   Before JONES, C. J., MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*William H. Wood,* with him *Charles W. Hull,* and *Hull, Leiby and Metzger,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BOK, January 16, 1961:

Two cases with identic legal problems are involved in this appeal by the defendant taxpayer.

They concern the resettlement of defendant's corporate net income tax for the years 1951 and 1952. The cases were heard together by the Dauphin County court without a jury upon stipulated facts, and when judgment was given for the Commonwealth the taxpayer appealed.

The control law is the Act of May 16, 1935, P. L. 208, 72 PS §3420, as amended. Its pattern imposes a net income tax on corporations, the tax measured by the taxpayer's return to the Federal Government and

the ascertainment of the tax by it. The Act has been upheld from *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421 (1936), 184 A. 37, to *Commonwealth v. Koppers Co.,* 397 Pa. 523 (1959), 156 A. 2d 328.

The Act provides for resettlements when a tax is changed by court or administrative action, and at 72 PS §3420h it reads: ". . . The tax imposed by this act shall be settled, resettled, and otherwise imposed and adjusted in the same manner, within the same periods of time, and right of resettlement, review, appeal, and refund, as provided by law in the case of capital stock and franchise taxes imposed upon corporations."

The provisions referred to in the case of capital stock and franchise taxes are found in the Act of April 9, 1929, P. L. 343, Art. XI, §§1102 to 1105, both included, as amended, 72 PS §§1102-1105. These allow a petition for resettlement in ninety days (§1102), a petition for review to the Board of Finance and Revenue in sixty days (now ninety) (§1103), appeal in sixty days to the Court of Common Pleas of Dauphin County (§1104), and right of the Department of Revenue voluntarily within two years to make a resettlement (§1105). This last right also appears in the Corporate Net Income Tax Act at §8(a), 72 PS §3420h, and the taxpayer is required to file a Report of Change, should any be made by the Federal fisc, in §7(a), 72 PS §3420g.

In the 1951 case now before us the Department settled the defendant's tax on June 26, 1952. On March 9, 1954, the defendant filed its Report of Change, and the tax was resettled on March 31, 1954. On June 8, 1956, a second Report of Change was filed, and on August 8, 1956, the Department again resettled the tax accordingly. On November 26, 1956, defendant filed its petition for review, which was refused, and then appealed to the Dauphin County Court on July 31, 1957.

In the 1952 case the Department settled the tax on June 16, 1953. On June 8, 1956, defendant filed its Report of Change, and the tax was resettled on October 10, 1956. On March 4, 1957, defendant filed its petition for review, which was refused, and then appealed to the Dauphin County Court on July 31, 1957.

It is unnecessary to discuss the nature of the changes now urged as corrections. Suffice it to say that they arose from errors made by the taxpayer in filing its original report. Defendant did not then try to correct its mistakes by a timely filing of a petition for resettlement or for review, in the manner and within the time limit provided by law. It now seeks to correct its erroneous tax fractions by filing Reports of Change three and four years after the taxes had been settled. Even the two-year period for voluntary action by the tax officers had expired.

The appellant's main argument is that a resettlement means a reconsideration of everything involved, and that the first report and settlement concluded nothing.

It is conventional law that when a controlling statute calls for things to be done within stated times they must be done so or rights fail. In other fields than taxation, for example, a voter who sought to change his party affiliation was denied the privilege because he refused to take the oath required by an Act of Assembly, in *Ermine v. Frankel,* 322 Pa. 70 (1936), 185 A. 269, and in proving whether abandonment had occurred in an adoption case, the proponent was held closely to the Act in *Schwab Adoption Case,* 355 Pa. 534 (1947), 50 A. 2d 504. In the latter case we said: "Where a remedy or method of procedure is provided by an Act, its provisions must be strictly pursued and exclusively applied: Bartron v. Northampton County, 342 Pa. 163, 168, 19 A. 2d 263; Thompson v. Morrison,

352 Pa. 616, 624, 44 A. 2d 55; Era Company, Ltd. v. Pittsburgh Consolidation Coal Company, 355 Pa. 219."

In *Commonwealth v. Allied Building Credits, Inc.*, 385 Pa. 370 (1956), 123 A. 2d 686, the Corporate Net Income Tax Act, which faces us here, was involved, especially the provision that notice of settlement by the Department of Revenue shall reach the taxpayer before the end of the year after the tax report was required to be made. We quoted Mr. Justice KEPHART in *East Lake Road & Payne Ave.*, 309 Pa. 327 (1932), 163 A. 683, as follows: "We have held as a general rule that where an act of assembly commands an act to be performed within a certain time the words employed are mandatory. It is not within the power of courts to waive or dispense with such legislation: Singer v. D., L. & W. R. R. Co., 254 Pa. 502; Wise v. Cambridge Springs Boro., 262 Pa. 139; Harris v. Mercur, 202 Pa. 313; Field's App., 305 Pa. 125, 129. There are exceptions to the rule: it does not embrace literal compliance with an act, the performance of which has been made impossible through no fault of the one whose duty it was to act, where the thing to be done may be done at some future time (Com. v. Hill, 185 Pa. 385); nor does it include the performance of a public duty, the neglect of which works general inconvenience, serious injury, or injustice to those having no control over the person who is to perform the duty: Com. v. Griest, 196 Pa. 396, 416. However, where the act to be performed concerns vested rights, procedure, or other similar matters, such as the imposition of a lien or a charge against land, the statute is mandatory and its requirements must be strictly followed. See Wise v. Cambridge Springs Boro., supra; In re Road in Salem Twp., 103 Pa. 250; Harris v. Mercur, supra.

. . .

"It may as well be urged that the 30-day time within which an appeal can be taken to the courts was directory, and an appeal could be taken at any time. The same reasoning might then be applied to appeals to this court."

Defendant uses his argument of a resettlement opening everything as a means to avoid the grip of these cases. It overlooks the obvious fact that the State and Federal processes are very different. The Federal authorities are not interested in the defendant's errors, namely, the wrongful setting of the tax jaws by showing cash in bank in both numerator and denominator of the tangible property fraction, or the amount that should have appeared only in the denominator of the gross receipts allocation fraction to show the proportion between business done in Pennsylvania to that done outside. Such matters are of concern to the State only. The Act, in §2, defines net income as "that returned to and ascertained by the Federal Government", namely, the amount subject to Federal tax: *Commonwealth v. Electrolux Corp.*, 362 Pa. 333 (1949), 67 A. 2d 105. There is no direct relation between the elements in the Federal tax base and those in the fractions, which measure corporate activity within the State and are created by its laws. Thus it may be, quite as appellant contends, that the final ascertainment of the Federal tax may take time, but it does not follow that the correction of appellant's errors need await the outcome.

Nor is the State interested in the Federal method of ascertaining the tax. As we said in *Commonwealth v. Warner Bros.*, 345 Pa. 270 (1942), 27 A. 2d 62: "Net income as ascertained is the base upon which the tax is measured, not the tax itself. How it was fixed by the Federal authorities is of no concern to the taxing officers of the Commonwealth nor to its statute. The rate of the income tax may vary, or the method

of its computation, but as a base, it is unvarying." See also *Commonwealth v. Budd Co. & Westinghouse Electric Corp.*, 379 Pa. 159 (1954), 108 A. 2d 563.

We regard the case of *Commonwealth v. Abrasive Co.*, 60 Dauphin 409, 85 Pa. D. & C. 376 (1949), as correctly decided, unmodified by later decisions of the court below. The court there said: "A careful reading of section 7 reveals that the purpose of a report of change is to show the net income returned by a corporation as finally changed or corrected by the Federal Government; and that the resettlement provided for therein is to be made if, and *only* if, '*as a result of such final change or correction,* there should be any change made in the amount of the net income of any corporation upon which tax is imposed by this act.' There is nothing in the wording of this section to support a conclusion that a resettlement made thereunder must incorporate revisions of the original report which appear in the corrected report but which were not occasioned by the change in income. The sole purpose of the resettlement provided by section 7 is to make such adjustment in the tax of a corporation as may be occasioned by a change in income." (Original emphasis.)

It added: "The difficulty with defendant's position is that it failed to follow the proper procedure for the correction of any error in the fractions within the time prescribed by law—namely, it did not file a petition for resettlement within 90 days of the mailing to it of a copy of the original settlement, as provided in section 8 (b), supra (incorporating therein by reference section 1102, as amended, of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1102). And but for the happening of the specific contingency provided for in section 7— i.e., a Federal change in net income—neither the corrected report nor the resettlement based thereon, and here appealed from, would have been made. In other words, defendant is attempting to take advantage of

the Federal change in income to do by indirection under section 7 what it can no longer accomplish directly under section 8 (b). This it may not do.

"To hold otherwise would be to say that where, as here, subsequent to the expiration of the statutory period within which a taxpayer may petition for a resettlement generally, a Federal change in income necessitates the resettlement of the corporate net income tax of a corporation, the entire tax account of the corporation may be reopened. Far from producing a result which is 'according to law', as defendant contends, such a ruling would render absolutely meaningless the provisions of the act establishing a time limit for the filing of petitions for resettlement generally. In addition, such a ruling manifestly would discriminate against those taxpayers whose net income is not changed by the Federal Government.

"It should also be noted that defendant had a further remedy which it failed to pursue—it failed to file a petition for refund, as provided by section 503, as amended, of The Fiscal Code, supra, 72 PS §503.

"From all the foregoing, it follows that in resettling the 1940 corporate net income tax against defendant pursuant to the report of change, the taxing departments properly limited the resettlement to the reduction in income and refused to adopt the revised fractions. The fact that, if timely made, the revisions in the fractions would have been proper under the act, in nowise affects this conclusion."

Appellant argues that *Abrasive* must be limited to its facts and applied only where there is a decrease in the amount of net income ascertained by the Federal authorities; that it may not apply where, as in one of the appeals before us, there is an increase in the ascertained net income. The argument is based on Sec 8(c) of the Act, 72 PS §3420h. This ship won't sail, since

312

8(c) refers to such final change in net income by the Federal fisc as results in additional tax. While the change in appellant's 1952 net income showed an increase, the correction of errors sought to be shown would reduce the tax, and hence 8(c) could not apply.

Since the case was correctly decided below, the judgments are affirmed.