745 P.2d 116

**STATE of Arizona, ex rel., ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellant,**

v.

**ARIZONA SAND AND ROCK COMPANY, Defendant–Appellee.**

**No. CV–86–0540–PR.**

Supreme Court of Arizona, En Banc.

Oct. 6, 1987.

Reconsideration Denied Nov. 17, 1987.

Robert K. Corbin, Atty. Gen. by Gail H. Boyd, Asst. Atty. Gen., Phoenix, for plaintiff-appellant.

H. Jay Platt, St. Johns, for defendant-appellee.

MOELLER, Justice.

## BACKGROUND AND ISSUE

Under Arizona income tax law, Arizona taxpayers are allowed to deduct from their state taxable income federal income taxes paid or accrued for that tax year. A.R.S. §§ 43–1022(11) and 43–1043(A)(5) (formerly A.R.S. §§ 43–123(C) and 43–123.05). In this case, we must fashion a method by which Arizona taxpayer Arizona Sand & Rock Company (AS & R) may calculate this deduction.

Our task is complicated by two factors. First, AS & R belongs to a group of affiliated corporations which join together to file a single, consolidated federal tax return under 26 U.S.C.A. §§ 1501–04. Second, this affiliated group reduces its federal tax liability with investment tax credits allowed it by federal tax law.

The tax years at issue in this case are 1978 and 1979. AS & R and the Arizona Department of Revenue (ADR) agree that substantially all income earned by the group during those tax years was attributable to AS & R and its parent company, California Portland Cement Company. Additionally, all income earned by AS & R in 1978 and 1979 is attributable to Arizona, and the parties agree on the exact amount of that income. Although AS & R's Arizona income is not in dispute, AS & R cannot calculate its federal income tax deduction by simply preparing a hypothetical federal income tax return revealing what AS & R would have paid to the federal government had it filed singly. This court previously has held that the deduction for federal income taxes must be based on those taxes

"actually paid," and this does not allow a deduction based on a hypothetical return. Rather, a member, such as AS & R, of an affiliated group filing a consolidated federal return must base its deduction for federal taxes on the affiliate's "proportionate share of the consolidated tax liability." *Arizona Dept. of Revenue v. Transamerica Ins. Co.,* 124 Ariz. 417, 421, 604 P.2d 1128, 1132 (1979).

A common method of calculating this "proportionate share" is to apply a "net-to-net ratio" to the net federal tax liability of the consolidated group. A net-to-net ratio is a fraction in which the individual affiliate's net income is the numerator and the sum of the net incomes of all affiliated members which have shown a profit for the year (the "gain-members" of the group) is the denominator. Thus, in ordinary circumstances, the following formula would be used to determine a taxpayer's deduction:

$$\text{Deduction} = \begin{array}{c}\text{Group's Consolidated}\\ \text{Net Federal Income}\\ \text{Tax Liability}\end{array} \times \frac{\text{Member's Net Income}}{\begin{array}{c}\text{Sum of Gain-Members'}\\ \text{Net Incomes}\end{array}}$$

For ease of reference, this formula will be expressed throughout the remainder of the opinion as:

$$D = CN \times NTN$$

where D is the deduction for federal income taxes, CN is the group's consolidated net federal income tax liability, and NTN is the net-to-net ratio.

The parties agree that use of a net-to-net ratio is appropriate for determining AS & R's proportionate share and have, in fact, agreed on the numerator and denominator of the net-to-net ratio. They also agree on the amount of the group's actual federal tax liability. Both parties argue, however, that the investment tax credits generated by the group members require that the basic formula discussed above be altered to give an exact accounting of the credits generated by AS & R.

Investment tax credits are tax credits based on a percentage of the purchase price of capital goods. The federal government allows a taxpayer to deduct this credit from his gross federal tax liability. In tax years 1978 and 1979, AS & R and other group members were entitled to investment tax credits. These credits were used to reduce their consolidated federal tax liability.

In those years, AS & R calculated its state deduction using a formula approved for use with foreign tax credits by the court of appeals in *Anderson, Clayton & Co. v. DeWitt,* 20 Ariz.App. 474, 513 P.2d 1357 (1973). In that case, the court of appeals faced a dispute concerning how to calculate the federal income tax deduction when the taxpayer was allowed a foreign tax credit by the federal tax code. The *Anderson, Clayton* taxpayer earned income in Arizona, in other parts of the United States, and abroad. The federal government allowed the taxpayer a tax credit to offset taxes paid to foreign governments on income earned abroad, thus eliminating double taxation on that income. The Tax Commission (predecessor to Arizona Department of Revenue) asserted that the foreign tax credits had no bearing on the computation of the taxpayer's share of federal taxes apportionable to Arizona. The Commission asserted the following formula accurately calculated the taxpayer's allowed deduction:

$$\frac{\text{Arizona Income}}{\text{Worldwide Income}} \times \begin{array}{c}\text{Federal Tax}\\ \text{Paid}\end{array} = \text{Deduction}$$

The taxpayer argued that this formula under-allocated the share of the tax liability attributable to Arizona and offered the following alternative:

$$\frac{\text{Arizona Income}}{\text{Worldwide Income}} \times \begin{array}{l}(\text{Federal Tax Paid})\\(\qquad+\qquad)\\(\text{Foreign Tax Credit})\end{array} = \text{Deduction}$$

The court rejected the Commission's formula, noting that it fell "woefully short" of achieving the objective of the statutory deduction—"a deduction from its gross Arizona income of that portion of the federal income tax paid which is allocable to its income taxable by Arizona." 20 Ariz.App. at 476, 513 P.2d at 1359. The court criticized the Commission's formula, pointing out that it multiplied a ratio which included "*essentially untaxed* (federally speaking) foreign source income" in the denominator by a figure from which foreign taxes had already been excluded (federal taxes actually paid). *Id.* The taxpayer's formula cured this defect by adding into the formula the foreign tax credit, which was, in essence, the federal tax on the income earned abroad.

Later, in the *Transamerica* decision, this court used that same formula to calculate the deduction where the taxpayer was entitled to both foreign tax credits and investment tax credits. In that case the parties and the trial court treated the two types of credit as interchangeable. In appraising that treatment, this court noted that no one had suggested that the two types of credits be treated differently.

Thus, the formula used and advocated by AS & R is the one approved for foreign tax credits in *Anderson, Clayton,* and applied in *Transamerica* to investment tax credits. That formula adds to the affiliated group's net tax liability all investment tax credits attributable to non-Arizona operations and multiplies that sum by the net-to-net ratio. This formula can be expressed algebraically as:

$$D = (CN + NAI) \times NTN$$

where NAI is the value of investment tax credits generated by non-Arizona operations and the other symbols have the same meanings referred to earlier.

When ADR conducted an audit of AS & R, it disallowed a part of the deduction AS & R had taken for federal income taxes paid, thus increasing AS & R's state income tax liability. ADR asserted that the formula used by AS & R could not be used under the circumstances, and it used a different formula to calculate the deduction for federal income taxes. This formula has apparently never been approved by the courts, but according to ADR, it is faithful to the principles of *Anderson, Clayton* and *Transamerica.*

ADR's formula does give special consideration to investment tax credits. It adds all investment tax credits to the net federal tax liability (re-establishing the gross federal tax liability), multiplies that sum by the net-to-net ratio, and then subtracts from that product the investment tax credits attributable directly to AS & R's Arizona operations. This formula can be expressed as:

$$D = [(CN + I) \times NTN] - AI$$

where I is the value of all investment tax credits generated by the group, AI is the value of all investment tax credits generated by AS & R, and the other symbols have the same meanings referred to earlier.

Following ADR's partial disallowance, AS & R filed a petition for redetermination with ADR. It was rejected. AS & R's appeal to the State Board of Tax Appeals was successful, however, with the board finding that it was bound by the *Transamerica* opinion to apply the *Anderson, Clayton* formula advocated by AS & R.

ADR took the action to superior court. In ruling on cross-motions for summary judgment, that court also considered itself bound by *Transamerica* and entered judgment for AS & R. The court indicated, however, that the result might have differed absent the *Transamerica* opinion.

The dispute moved on to the court of appeals. That court's opinion criticized *Transamerica*'s approval of the

*Anderson, Clayton* formula for use with investment tax credits. The court of appeals carefully examined the inadequacies of the formula advocated by AS & R for use in this action. The court also questioned the validity of ADR's formula. The court reluctantly affirmed, however, holding that it, too, was bound by *Transamerica*.

This court granted ADR's petition for review and accepted the case pursuant to the jurisdiction granted us in Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24. We then ordered further briefing from the parties, requesting that they address the criticisms leveled at their formulae by the court of appeals. We also requested that they consider alternative solutions, including one hinted at by the court of appeals and mentioned by AS & R in its response to the petition for review—that the appropriate formula to be used in this case is simply D = CN × NTN, without special consideration of the tax credits.

### RELIANCE ON *TRANSAMERICA*

As primary support for its formula, AS & R relies on *Transamerica*, arguing that it requires the formula's use in all cases involving investment tax credits. Apparently, the courts below agreed with this interpretation of *Transamerica*, since both the superior court and the court of appeals found that they were bound to apply this formula.

As we have already mentioned, however, the court in *Transamerica*, while approving the *Anderson, Clayton* formula for use in that case, expressly pointed out that no one had suggested that investment tax credits might properly be treated differently than foreign tax credits. Evidently the formula provided a workable solution in the circumstances of that case because no alternative formulae were advanced. We do not read *Transamerica* as dictating that the formula used there be the exclusive formula by which to calculate the federal income tax deduction when investment tax credits are involved.

Thus, we are not bound to use the formula advanced by AS & R simply because it was applied in *Transamerica*. That formula should be employed only if its application would be consistent with the principles discussed in *Anderson, Clayton* and in *Transamerica*.

### RESOLUTION

■ This case can be resolved by application of the principles already outlined in the *Transamerica* decision. In that case, we rejected a deduction for federal income taxes based on the hypothetical return of an individual member of a group filing a consolidated federal return. Instead we held that the deduction was intended to be based on taxes *actually paid*. *Transamerica*, 124 Ariz. at 421, 604 P.2d at 1132. Where the taxpayer is a member of a group which files a consolidated federal tax return, the deduction is in "an amount proportionate to the federal income taxes actually paid by the parent...." *Id.* Certainly, no phrase could be more easily understood than "taxes actually paid"—this is the amount of money submitted to the federal government to pay the net tax liability of the group. As noted earlier, these parties have already agreed that the net-to-net ratio determines the "proportionate share." Thus, the formula:

$$D = CN \times NTN$$

is appropriate to determine the deduction in this case.

The parties' formulae are variations of this basic formula. The court of appeals found the parties' rationales for varying from this basic formula unpersuasive. We agree.

### AS & R'S FORMULA

In the opinion of the court of appeals, AS & R's formula was objectionable because the policies behind investment tax credits and foreign tax credits are different, and thus the same formula should not be applied to both credits. AS & R responds to this criticism by arguing that regardless of the policies underlying the credits, the effect of the credits is identical—federal tax liability is reduced. Thus, the credits

should be treated the same for the purposes of calculating this deduction.

We agree with the court of appeals. The policy underlying foreign tax credits is to free taxpayers from the burden of being taxed twice, first by the United States, and then by a foreign government, on income earned abroad. Investment tax credits, on the other hand, encourage taxpayers to purchase capital goods and thereby stimulate the economy. Unlike foreign tax credits, amounts allowed for investment tax credits have not been, and will never be, paid out to any taxing authority. We therefore disagree with AS & R that the two kinds of credits should be treated interchangeably for purposes of determining the allowed state tax deduction.

Foreign tax credits basically allow taxpayers to subtract from their gross federal tax liability the taxes they have paid to foreign governments on income earned abroad but also included in their United States taxable income. Thus, these credits leave this foreign income federally untaxed. The very heart of the problem at issue in *Anderson, Clayton* was the Tax Commissioner's attempt to determine the taxpayer's deduction for federal taxes paid by including federally untaxed income in the denominator of the net-to-net ratio, but excluding from the formula the federal taxes (foreign tax credits) directly attributable to that income by applying the net-to-net ratio to the taxpayer's net federal tax liability. The court resolved the dispute by accepting a formula which in essence added the federal taxes attributable to the foreign income back into the formula. Significantly, the court recognized another acceptable solution might have been eliminating the federally untaxed foreign income from the net-to-net ratio, thus applying a ratio of Arizona income to United States income, rather than worldwide income, to the net or *actual* federal tax liability. 20 Ariz.App. at 477–78, 513 P.2d at 1360–61.

Investment tax credits, however, produce no identifiable amount of federally untaxed income. Based on a percentage of the price of capital goods, these credits simply reduce the ultimate tax liability of the taxpayer, much in the way deductions from a taxpayer's gross and adjusted gross income ultimately reduce a taxpayer's tax liability.

The deduction at issue in this case is one for federal income taxes paid or accrued. Since the policy and effect of foreign tax credits can distort the portion of the federal tax liability attributable to Arizona when the net-to-net ratio method is used to calculate this deduction, the basic formula, $D = CN \times NTN$, must be adjusted to cure this problem. Because investment tax credits present no similar problems, the basic formula need not be altered.

AS & R also supports its formula by arguing that just as the deduction for federal income tax does not allow the taxpayer to deduct taxes which are attributable to non-Arizona income, neither does the deduction permit a reduction of federal tax by non-Arizona credits. AS & R sees this rule concerning credits as the "mirror-image" of the deduction.

We believe that AS & R's position is incorrect. Tax deductions are peculiarly legislative, and taxpayers are indeed fully entitled to the deductions agreed upon by the legislature. They are not, however, entitled to "mirror images" of the deductions granted by the legislature. *See Transamerica*, 124 Ariz. at 420, 604 P.2d at 1131. In this case, the legislature has granted a deduction for federal income taxes. We have interpreted that to mean a deduction based on taxes actually paid to the federal government. *Transamerica*, 124 Ariz. at 421, 604 P.2d at 1132. In so finding, we necessarily held that the deduction must be based on the various incomes, deductions and credits contributed to the federal return by the individual members of the group. Having filed a consolidated federal return, AS & R does not argue that it is entitled to calculate the federal income tax deduction by taking into account only *its* income, *its* deductions and *its* credits. Indeed, this is the very approach rejected in *Transamerica*. AS & R has advanced no legitimate reason to treat investment tax credits differently than other incomes and deductions.

Because the special problems involved with foreign tax credits discussed earlier are simply not present in situations involving investment tax credits, AS & R is not entitled to add the non-Arizona investment tax credits back to the actual federal tax liability before the net-to-net ratio is applied.

We add that we also agree with a second criticism advanced by the court of appeals of the AS & R formula. The court found that the AS & R formula may produce an aggregate deduction for the individual members that is in excess of the taxes actually paid to the federal government. AS & R counters by assuring this court that, in fact, only five states other than Arizona allow their taxpayers a deduction for federal income taxes. Because AS & R's affiliates do business in none of those states, their aggregate deduction will not exceed the taxes actually paid.

> As the court of appeals has noted:
> [b]ecause of the differences in the various states' income tax procedures, it is probably impossible to determine whether the exact amount of federal taxes appearing in the consolidated return is claimed proportionately by related companies throughout the United States. It is possible, however, to implement a formula which, in theory, would achieve that result.

*Motorola, Inc. v. Arizona Dept. of Revenue,* 143 Ariz. 491, 493, 694 P.2d 321, 323 (App.1984). It is not only possible to achieve this result, it is desirable. The fact that most states do not allow a deduction for federal income taxes does not justify AS & R's attempt to take a larger deduction in Arizona than was contemplated by our legislature.

We also reject AS & R's contention that there is no evidence in the record suggesting that the aggregate deduction would exceed the tax liability. No evidence is needed. An examination of the formula advanced by AS & R makes obvious that in many, if not most, cases, the deductions, if available to all group members, would total more than the actual tax liability. Regardless of which group members are entitled

to this deduction, a formula which would allow such a result cannot stand.

## ADR'S FORMULA

We have already discussed at length our interpretation of *Anderson, Clayton.* It is thus obvious that the formula proposed by ADR is no more acceptable than that proposed by AS & R. As we have seen, because of the differences between foreign tax credits and investment tax credits, the foreign tax credits require the special consideration given by the *Anderson, Clayton* formula and investment tax credits do not.

The contradiction between ADR's formula and the rationale supporting it is evident. In its supplemental brief, ADR states, "The goal of the relevant statutes as interpreted by case law is to allow a deduction which is the *actual tax liability paid.* With regard to the subsidiary of a consolidated group, the deduction is its proportionate share of *the actual taxes paid by the parent.*" (Emphasis added.) Yet the formula it advocates does not base the deduction on the actual taxes paid by the group; rather, it bases the deduction on the gross tax liability of the group. Thus, ADR's own argument runs against the application of its formula.

## MOOTNESS

■ Finally, AS & R argues this case is moot because tax decisions in Arizona are given prospective application only. It is true that we have held that "in tax matters—when a previous decision is overruled—the new decision is given prospective effect only." *Arizona State Tax Comm'n. v. Ensign,* 75 Ariz. 376, 376, 257 P.2d 392, 392 (1953). That principle has no application in this case since we are not overruling any prior decision.

■ AS & R also bases its mootness argument on its claim that investment tax credits have been repealed. In fact, a more restrictive version of the investment tax credit is still in effect, 26 U.S.C.A. §§ 46–49, and, of course, such credits could be more fully restored by Congress at any time. In addition, our opinion in this case

may help resolve other Arizona disputes. The case is not moot.

## DISPOSITION

That portion of the court of appeals' decision holding that it was bound to apply the formula used in the *Transamerica* decision to investment tax credits is vacated, as is its award of attorneys' fees. This case is reversed and remanded to superior court with instructions to calculate the taxpayer's deduction by use of the formula $D = CN \times NTN$ as explained above and to enter judgment accordingly. AS & R has requested attorneys' fees pursuant to A.R. S. § 12–348. In light of our disposition of this case, the request is denied.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.