**KELLY–SPRINGFIELD TIRE CO., Appellant,**

v.

**IOWA STATE BOARD OF TAX REVIEW, Appellee.**

**SHELL OIL COMPANY, Appellant,**

v.

**The IOWA DEPARTMENT OF REVENUE, Appellee.**

Nos. 87–278, 86–1565.

Supreme Court of Iowa.

Oct. 21, 1987.

Burns Mossman of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellant Kelly–Springfield Tire Co.

J. Lloyd Kennedy and William D. Peltz, Houston, Tex. and James W. Hall of Hall & Irvine, Cedar Rapids, for appellant Shell Oil Co.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Gerald A. Kuehn, Asst. Atty. Gen., for appellee.

CARTER, Justice.

These consolidated appeals raise two legal issues in regard to income tax assessments by the Iowa Department of Revenue (IDOR) being judicially reviewed under Iowa Code section 17A.19 (1985). These issues are: (1) whether assessment of additional corporation income taxes by IDOR against appellant Kelly–Springfield Tire Co. (Kelly–Springfield) in No. 87–278 and appellant Shell Oil Company (Shell) in No. 86–1565, made more than three years after the filing of the taxpayers' returns, was untimely under Iowa Code section 422.25(1) (1977) and therefore invalid; and (2) whether assessment of additional income taxes against Shell in No. 86–1565 was in violation of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333(a). For reasons hereafter stated, we answer the first question in the affirmative and the second question in the negative, thus, affirming in part and reversing in part the decisions of the district court.

I. *Timeliness of Assessments Under Iowa Code Section 422.25(1) (1977).*

The record supports the taxpayers' contention that assessment of additional corporate income taxes by IDOR against Kelly–Springfield for the years 1971–78, inclusive, and against Shell for the years 1975–77, inclusive, were initiated more than three years after those taxpayers had filed corporate income tax returns for the years in question. Consequently, both Kelly–Springfield and Shell have contended both before the agency and throughout these judicial review proceedings that these assessments were untimely under Iowa Code section 422.25(1) (1977) and thus invalid.

Section 422.25(1) provides:

As soon as practicable and in any event within three years after the return is filed the department shall examine it and determine the correct amount of tax, and the amount so determined by the department shall be the tax; provided that if the taxpayer omits from income such an amount as will, under the Internal Revenue Code of 1954, extend the statute of limitations for assessment of federal tax to six years under said Code, the period for examination and determination shall be six years; and provided further that the period for examination and determination shall be unlimited in the case of a false or fraudulent return with intent to evade tax or in the case of failure to file a return. Notwithstanding the periods of limitation for examination and determination heretofore specified, the department shall have six months to make an examination and determination from the date of receipt by the department of notice from the taxpayer of the final disposition of any matter between the taxpayer and the internal revenue service with respect to the particular tax year.

For each of the tax years in controversy, the Internal Revenue Service (IRS) had audited the taxpayers' returns. The additional assessments of Iowa income taxes were made within six months of receipt by IDOR of notice of the final disposition of the federal audit for the particular tax year. These additional assessments of Iowa income taxes, except for certain adjustments in Kelly–Springfield's tax liability for 1971, were unrelated to and not affected by any changes made in connection with the audit of the taxpayers' federal income tax liabilities.

The issue which was framed at the contested case hearing was whether IDOR's

right of examination and determination of additional state tax liability during the extended six-month period following the conclusion of a federal audit is unlimited in scope or is limited to corrections resulting from action taken in the federal audit. Following the contested case hearing, IDOR concluded that its right of examination and determination for six months following a federal audit is unlimited in scope. The district court agreed with that conclusion.

The primary argument advanced by IDOR to sustain its interpretation is that the words "examination and determination," which appear several times within section 422.25(1), are in no instance qualified with respect to the scope of the inquiry IDOR is permitted to make. Because the scope of the examination and assessment of additional tax is concededly unlimited in the other circumstances where the phrase "examination and determination" appears in the statute, IDOR argues that consistency in the application of identical statutory language requires an unlimited examination also be permitted in the present situation.

In response to this argument, the taxpayers urge that an exception to a general period of limitation which is triggered by the occurrence of a particular event must be interpreted in some manner which is relevant to that event. The mere occurrence of a federal audit is not, taxpayers argue, relevant to whether the limitation period for imposing state tax liability should be extended. It only becomes relevant, they suggest, if action taken in the federal audit alters some basic premise on which the taxpayer's state tax liability was initially reported.

■ We find the taxpayers' interpretation to be more plausible than the one proposed by IDOR. A court construing a statute to ascertain legislative intent must not only consider the language used, but must also take account of the object sought to be accomplished or the problems sought to be remedied and arrive at a construction that will best effect its purpose. *Matter of Girdler*, 357 N.W.2d 595, 597 (Iowa 1984); *In Interest of G.R.*, 348 N.W.2d 627, 631 (Iowa 1984); *Lau v. City of Oelwein*, 336 N.W.2d 202, 203 (Iowa 1983).

■ The extended period of examination following the conclusion of a federal audit was inserted in section 422.25(1) by 1957 Iowa Acts chapter 211, section 1. The determination of the primary objective of such an amendment requires reference to the prior state of the law and the circumstances surrounding the amendment's enactment. *City of Des Moines v. Public Employment Relations Bd.*, 275 N.W.2d 753, 760 (Iowa 1979). Applying these principles to the present case it appears that, prior to the enactment of the 1957 amendment, it was established as the legislative policy of this state that examination and determination of the proper amount of tax was to be made by IDOR within three years of the filing of the taxpayer's return except in certain situations of taxpayer omission not relevant here.[1] The interpretation proposed by IDOR is, we believe, incompatible with the basic premise upon which section 422.25(1) is based, *i.e.*, that unless certain enumerated circumstances have occurred which preclude the agency from making an accurate assessment of Iowa taxes within the three-year period its right of examination is barred.

We find nothing in the 1957 amendment which suggests a retreat from this overriding policy. Rather, the federal audit exception to the three-year limitation appears to be a fair way of dealing with changed circumstances resulting from the federal examination. The exception is therefore available to IDOR only if adjustments made by the internal revenue service create a change of circumstances affecting the taxpayer's Iowa tax liability. The rather short period of time granted IDOR to make adjustments of Iowa tax liability following the conclusion of the federal inquiry

---

1. This policy has existed for more than 50 years. Beginning in 1934, the limitation period was established at two years. 1934 Iowa Acts ch. 82, § 21 (45 Ex.G.A.). It was increased to three years in 1955. 1955 Iowa Acts ch. 210, § 1.

116

supports our conclusion that the examination is limited in scope.[2]

In *Commonwealth v. Lukens Steel Co.*, 402 Pa. 304, 167 A.2d 142 (1961), the court interpreted a Pennsylvania statute which provided that,

> [I]f at any time the net income as returned by any corporation to the federal government is finally changed or corrected by the commissioner of internal revenue or by any other agency or court of the United States with a result that tax, in addition to the amount paid, is due under this act, the department is hereby authorized and empowered to make a resettlement of the tax due by such corporation, based upon the facts contained in the report, or upon any information within its possession or that shall come into its possession.

Pa.Stat.Ann.Tit. 72, § 3420h(c) (Purdon 1964). Notwithstanding the rather broad language in the final sentence of the statute, the court reasoned that its legal effect was to extend the limitation period only for purposes of making assessments of state income taxes due as a result of federal adjustments. The court indicated a contrary ruling would render absolutely meaningless the provisions of the act establishing a general time limit for resettlement. 402 Pa. at 309–10, 167 A.2d at 145. *See also McLean Trucking Co. v. Lindley*, 70 Ohio St.2d 106, 111, 435 N.E.2d 414, 417 (1982) (general limitation period absolute bar to assessment of additional state taxes unrelated to corrections made by internal revenue service).

IDOR argues that, notwithstanding the matters which we have discussed, its long-standing interpretation of the statute should be given some weight. Although the interpretation of the statute proposed by IDOR in the present case may have been the department's position for some time, it should be noted that it has issued no published rule or directive codifying

that position. As we have stated in another revenue case involving statutory interpretation, "the meaning of a statute is always a matter of law, and final construction and interpretation ... is for this court." *Sorg v. Iowa Dep't of Revenue*, 269 N.W.2d 129, 131 (Iowa 1978). *See also City of Des Moines*, 275 N.W.2d at 759–60. We hold that any adjustment by IDOR to the taxpayers' liability in the present cases which was not initiated within three years following the filing of returns was untimely and invalid except as it relates to changes required by the federal audit. This requires a reversal of No. 87–278 and a reversal of No. 86–1565 on this issue.

II. *Claims Involving Taxation of Revenues Derived From Outer Continental Shelf Lands.*

■ The next issue, involving only claims by Shell in No. 86–1565, concerns an alleged limitation on the power of the states to tax activities occurring on outer continental shelf (OCS) lands which Shell suggests is contained in the Outer Continental Shelf Lands Act, 43 U.S.C. section 1333(a).

The record reflects that Shell is a Delaware corporation engaged in a unitary business consisting of exploration for oil and the development, production, transportation, purchase and marketing of crude oil, natural gas, and chemical products. During the years at issue, certain of Shell's gross revenues were derived from sale of products extracted from OCS lands. During this period, Shell sold all of its OCS natural gas at the platform on OCS lands. In contrast, most of Shell's crude oil was transferred off OCS lands to other locations prior to being marketed. Shell's principal business in Iowa during this period consisted of marketing oil and chemical products which had been refined and manufactured outside Iowa.

---

2.  Another factor which suggests that the legislature intended a limited scope of examination is that legislative enactments contained in 1955 Iowa Acts ch. 210, § 2, which shifted to the state the burden of proof in areas where the right of examination is unlimited, were not made applicable to the extended period of examination following a federal audit. This suggests a legislative intent that the factual basis for reexamination of Iowa tax liability in the latter situation would turn on the result of the federal audit and not involve other areas of disputed fact.

In accordance with Iowa Code section 422.33(2)(b)(4), Shell's Iowa net income was derived by application of an apportionment formula wherein "the part attributable to business within the state shall be in that proportion which the gross sales made within the state bear to the total gross sales." Because its gross revenues for these years contained amounts realized from the disposition of OCS products, Shell maintains that it was improper for the state of Iowa to give any consideration to revenue from OCS sources in the application of the statutory apportionment formula utilized to determine its Iowa income tax liability.

In advancing this argument, Shell relies upon language contained in subparagraphs 2(A) and (3) of section 1333(a) of the OCS-LA, which provides, in part, as follows:

> (2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of the applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. *State taxation laws shall not apply to the outer Continental Shelf* . . . .
>
> (3) The provisions of this section for adoption of State law as the law of the United States shall never be interpreted as a basis for claiming any interest in or jurisdiction on behalf of any State for any purpose over the seabed and subsoil of the outer Continental Shelf, *or the property and natural resources thereof or the revenues therefrom.*

(Emphasis added.) Shell views the foregoing statutes as a Congressional directive designating any return from its OCS land transactions as federally protected income and, therefore, not includable in the Iowa tax base. In so arguing, it relies upon the decisions of *Aloha Airlines, Inc. v. Director of Taxation of Hawaii*, 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983), and *Ramah Navajo School Board, Inc. v. Bureau of Revenue of New Mexico*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982).

We do not agree that these cases support Shell's contentions. The policies underlying the federal legislation applied in the *Aloha Airlines* and *Ramah Navajo School Board* cases were clearly indicated to be such that the application of local taxing statutes would have undeniably frustrated the goals which Congress was attempting to promote. In contrast, Shell has indicated no particular area of Congressional policy in the management and control of the OCS lands which is frustrated by the state of Iowa applying a traditional measure of apportionment in order to obtain a valid local nexus for taxation purposes.[3]

The issue is, of course, entirely one of statutory interpretation. The Florida Supreme Court in *Shell Oil Co. v. Department of Revenue*, 496 So.2d 789, 791 (Fla. 1986), has rejected the interpretation which Shell seeks to place on 43 U.S.C. sections 1333(a)(2)(A), (3). In that case, the court concluded that the realization of the income by Shell occurred within the legislative jurisdiction of the taxing state. The facts of the present case differ slightly from those in the cited case because the Florida revenue officials had excluded from their apportionment formula that portion of Shell's

---

**3.** In defining the term "unitary business" for purposes of apportioning income, Iowa Code § 422.32(5) refers to a business carried on partly within and partly without a state where the portion of the business carried on within the state depends on or contributes to the business outside the state. Section 422.32(10) defines "State" so as to include "any territory or possession of the United States." We conclude that the OCS lands are a territory of the United States so as to be includable within this definition.

gross revenues which were derived from sales made on OCS lands. In the present case, Iowa has apparently included in its gross apportionment formula some revenues derived by Shell from the sale of natural gas at the platform on the OCS. We do not believe, however, that this distinction warrants a result in the present case which differs from the one reached by the Florida court.

In reviewing the legislative history of the OCSLA, we are convinced that the language restricting the application of state taxation laws to the OCS and denying to the state any interest in the natural resources or revenues from the seabed and subsoil of the OCS was intended as a limitation on the authority of states adjacent to OCS lands to extend legislative jurisdiction to the OCS. The legislation in question was the culmination of an historical tug-of-war between state and federal interests in the region. In a pertinent report on the legislation by the Senate committee, it was stated:

> It is the Committee's collective judgment that under the terms S. 1901 as reported, State taxation laws necessarily are excluded from applicability in this area of exclusive Federal jurisdiction not inside the boundaries of any state. Paragraph (3) of Section 4(a) specifically commands that—
>
>> The provisions of this section for adoption of the State law as the law of the United States shall never be interpreted as a basis for claiming any interest in or jurisdiction on behalf of any state for any purpose over the seabed and subsoil of the outer Continental Shelf, or the property and natural resources thereof or the revenues therefrom.

S.Rep. No. 411, 83rd Cong., 1st Sess. (1953).

Iowa's imposition of the challenged corporation income taxes on Shell for the years 1975–80, inclusive, is in no way dependent upon the exercise of legislative

jurisdiction on OCS lands. Its taxing jurisdiction depends instead on the nexus of Shell's activities within this state. The inclusion of some OCS revenues in the apportionment formula is simply a method of obtaining an acceptable measure of the local nexus.[4] This principle was illustrated in *Moorman Manufacturing Co. v. Bair,* 254 N.W.2d 737 (Iowa 1977), aff'd, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). In further amplifying the principles established in its affirming opinion in *Moorman,* the Supreme Court stated in *Mobile Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980):

> "[T]he entire net income of a corporation generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing instate aspects of interstate affairs." [citing *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 272–73, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197, 204 (1978) ] ... The requisite "nexus" is supplied if the corporation avails itself of the "substantial privilege of carrying on business" within the State, and "[t]he fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction."

*Id.* at 436–37, 100 S.Ct. at 1231, 63 L.Ed.2d at 520 (other citations omitted).

Shell's argument that somehow the source of the revenues prohibits their inclusion in the apportionment formula is only valid if it was the intent of Congress to prohibit that result. In seeking to determine that intent, we begin with the recognition that the pattern of apportionment of gross revenues, regardless of source, for purposes of determining local taxability is well established within our federal system. As observed in *Mobile Oil Corp.:*

> In the past, apportionability often has been challenged by the contention that income earned in one State may not be taxed in another if the source of the

---

4. In this regard, the nature of the tax differs substantially from the "first-use" tax involved in *Maryland v. Louisiana,* 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Shell's reliance on

that case is also misplaced because it was not decided under the OCSLA but instead involved the Natural Gas Policy Act.

income may be ascertained by separate geographical accounting. The Court has rejected that contention so long as the intrastate and extrastate activities formed part of a single unitary business.... In these circumstances, the Court has noted that separate accounting, while it purports to isolate portions of income received in various States, may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale.... Because these factors of profitability arise from the operation of the business as a whole, it becomes misleading to characterize the income of the business as having a single identifiable "source." Although separate geographical accounting may be useful for internal auditing, for purposes of state taxation it is not constitutionally required.

*Id.* at 438, 100 S.Ct. at 1232, 63 L.Ed.2d at 521 (citations omitted).

In deciding whether Iowa's taxing statutes offend against Congressional policies of management and control of OCS lands, it is preferable, we believe, to focus on the tax consequences which are produced by applying the apportionment formula rather than focusing on the various elements which are inserted into the equation in order to produce those consequences. Shell's argument fails to indicate how the impact of applying the apportionment formula detracts in any identifiable way from Congressional policy relating to OCS lands.

The inclusion of OCS revenues in gross sales for purposes of applying the statutory apportionment formula contained in Iowa Code section 422.33(2)(b)(4) apparently aids in obtaining an accurate measure of the tax to be imposed as a result of Shell's Iowa activities.[5] That, of course, is the goal of any apportionment formula. We cannot attribute to Congress an intent to impede this legitimate goal in the absence of some compelling indication that such was its intention in passing the OCSLA. We fail to devine any such intention from either the legislative history or language of

the Act. We conclude that the district court properly rejected Shell's petition for judicial review on this issue.

Based upon our determination of the issues presented, the judgment of the district court in No. 87–278 is reversed and that case is remanded to the agency for further proceedings not inconsistent with this opinion. The judgment of the district court in No. 86–1565 is in all respects affirmed on the issues involving application of 43 U.S.C. section 1333(a) and is reversed on the issues involving the application of Iowa Code section 422.25(1). As to the latter issues, the case is remanded to the agency for further proceedings not inconsistent with this opinion. The costs of appeal in No. 87–278 are taxed to appellee. The costs of appeal in No. 86–1565 are taxed seventy-five percent to appellant and twenty-five percent to appellee.

(NO. 87–278) REVERSED AND REMANDED; (NO. 86–1565) AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

All Justices concur except SNELL, J., who takes no part.