937 P.2d 363

ARIZONA DEPARTMENT OF REVE-
NUE, an agency of the State of
Arizona, Plaintiff–Appellee,

v.

GENERAL MOTORS ACCEPTANCE
CORPORATION, a New York cor-
poration, Defendant–Appellant.

No. 1 CA–TX 95–0004.

Court of Appeals of Arizona,
Division 1, Department T.

Nov. 12, 1996.

Review Denied May 20, 1997.

Grant Woods, The Attorney General by Gail H. Boyd, Special Assistant Attorney General and Kimberly J. Cygan, Assistant Attorney General, Phoenix, for Plaintiff-Appellee.

Lewis and Roca, L.L.P. by John P. Frank and Patrick Derdenger, Phoenix, and Quarles & Brady by Michael G. Galloway, Phoenix, for Defendant-Appellant.

## OPINION

GARBARINO, Judge.

General Motors Acceptance Corporation (GMAC) appeals from the tax court's order granting summary judgment in favor of the Arizona Department of Revenue (ADOR). We agree that the income tax deficiency assessment against GMAC for the tax years between 1976 and 1983 was timely issued pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 42–113(B)(7) (1991).

## ISSUES

1. Does the extended limitation period provided by A.R.S. section 42–113(B)(7) for assessing Arizona income tax deficiencies based on the existence of an agreement between the taxpayer and the United States Internal Revenue Service (IRS) to extend the federal deficiency assessment period for the same tax year permit ADOR to assess Arizona income tax deficiencies during the extended limitation period that are unrelated to any adjustment made by the IRS in the taxpayer's federal income tax liability?

2. If so, may the calculation method mandated by *State ex rel. Arizona Department of Revenue v. Arizona Sand & Rock Co.,* 155 Ariz. 58, 745 P.2d 116 (1987), for apportioning a share of a multistate business's federal income tax liability to Arizona be applied retroactively to increase

GMAC's Arizona income tax liability for the tax years in question?

3. Does A.R.S. section 42–113(B)(7) unconstitutionally delegate the state's taxing power to the IRS?

4. Should this Court award attorney's fees against GMAC pursuant to Rule 25, Arizona Rules of Civil Appellate Procedure (ARCAP)?

## FACTUAL AND PROCEDURAL HISTORY

Arizona formerly allowed an individual or corporate taxpayer to deduct from his Arizona gross income the amount of federal income taxes paid, accrued, or withheld during the taxable year. A.R.S. §§ 43–1022(11) and 43–1122(1) (1980). The statutes were amended in 1990, deleting the deduction. 1990 Ariz. Sess. Laws (3d S.S.) ch. 3, §§ 28, 42. The amendments apply retroactively to tax years beginning from and after December 31, 1989. *Id.* § 62.

Generally, a single taxable enterprise that does business both within and outside Arizona may deduct only the share of its federal income taxes that is reasonably attributable to Arizona. *See Arizona Dep't of Revenue v. Transamerica Title Ins. Co.,* 124 Ariz. 417, 421, 604 P.2d 1128, 1132 (1979). Federal income taxes are apportioned to Arizona through an arithmetic calculation, the details of which are not pertinent to this appeal.

In *Transamerica Title,* the supreme court permitted a multistate taxpayer to take into account the federal investment tax credits it earned on non-Arizona income when calculating its Arizona deduction for federal income taxes, analogizing the situation to the treatment of foreign tax credits in *Anderson, Clayton & Co. v. DeWitt,* 20 Ariz.App. 474, 513 P.2d 1357 (1973). 124 Ariz. at 423, 604 P.2d at 1134. However, in *State ex rel. Arizona Department of Revenue v. Arizona Sand & Rock Co.,* 155 Ariz. 58, 62–65, 745 P.2d 116, 120–23 (1987), the supreme court distinguished *Transamerica Title* on its procedural facts and determined that, given the underlying principles discussed in *Anderson, Clayton* and *Transamerica Title,* investment

tax credits should be excluded from that calculation. Removing investment tax credits from the apportionment formula produces a smaller deduction and, accordingly, a higher Arizona income tax liability.

In 1986, 1989, and 1993, General Motors Corporation and the IRS entered into waivers of the federal statute of limitations for income tax assessments against General Motors and its subsidiaries for tax years 1976 through 1983. The extension period for the 1976 and 1977 tax years lasted until at least September 29, 1989. The extension period for the 1978 through 1981 tax years lasted until December 31, 1991. The extension period for 1982 and 1983 lasted until December 31, 1994.

ADOR audited GMAC for tax years 1976 through 1983. It issued deficiency assessments against GMAC on April 29, 1986 and March 6, 1987. GMAC protested the April 29, 1986 assessment, challenging ADOR's method of calculating its deductions for federal income taxes.

On October 6, 1987, the supreme court settled any uncertainty about the correct method of calculating a multistate business's deduction for federal income taxes in *Arizona Sand & Rock,* 155 Ariz. 58, 745 P.2d 116 (1987). On February 6, 1990, ADOR issued a new Arizona income tax assessment for the 1976 through 1983 tax years, modified to conform to the supreme court's holding in *Arizona Sand & Rock.* For tax years 1976, 1978, 1981, 1982, and 1983, the modification increased GMAC's tax liability.

GMAC protested the modified assessment for those years contending that the limitation established by A.R.S. section 42–113 barred collection of any additional taxes. On appeal from an unfavorable administrative ruling on GMAC's protest, the Arizona Board of Tax Appeals, Division Two, held that the 1990 modified assessment was barred. ADOR brought this action in the tax court. On cross-motions for summary judgment, the tax court held that GMAC's federal income tax assessment extensions operated to extend the period during which ADOR could assess Arizona income tax deficiencies until March 29, 1990, at the earliest. GMAC timely appealed following entry of judgment. We

have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994). The appeal is assigned to Department T of this Court pursuant to A.R.S. sections 12–120.04(G) (Supp.1994) and 12–170(C) (1992).

## DISCUSSION

I. *Applicability of A.R.S. section 42–113(B)(7)*

■ Arizona Revised Statutes Annotated section 42–113 provides in pertinent part:

**A.** For the taxes to which this article applies every notice of every additional tax due shall be prepared on forms prescribed by the department and mailed within four years after the report or return is required to be filed or within four years after the report or return is filed, whichever period expires later.

**B.** The following are exceptions to the general rules prescribed by this section, and a deficiency assessment may be issued in any of the following cases:

. . . .

7. If a taxpayer agrees with the United States commissioner of internal revenue for an extension or renewals of the period for proposing and assessing deficiencies in federal income taxes for any year, the period for mailing a notice of a proposed income tax deficiency is four years after the return was filed or six months after the date of the expiration of the agreed period for assessing deficiencies in the federal income tax, whichever period expires later.

If A.R.S. section 42–113(B)(7) applies in this case, the earliest that ADOR could possibly be precluded from issuing an Arizona income tax assessment against GMAC for the tax years in question would be March 29, 1990, six months after the expiration of GMAC's waiver of the limitations period for federal income tax assessments. This is almost two months after ADOR issued the assessment that GMAC challenges in this case.

GMAC argues that A.R.S. section 42–113(B)(7) does not apply. It asserts that section 42–113(B)(7) is intended to enable ADOR to issue an adjusted Arizona income

tax assessment based on an adjusted federal income tax assessment issued after the normal four-year Arizona assessment limitation period has expired. A.R.S. § 42–113(A). GMAC argues:

> Tolling the statute of limitations in cases where federal income has not yet been finally determined is simply irrelevant to state disputes in which the issue is not the *amount* of the income subject to tax (determined by the federal government), but rather the *method* for determining an Arizona deduction, solely an Arizona concern, unaffected by the federal government.
>
> . . . .
>
> . . . It only makes sense that the Department should be allowed extra time to respond to adjustments by the federal government, since those adjustments directly affect Arizona taxable income. But did the legislature also intend that the Department should get a windfall additional statute of limitations when the adjustments that it is making are unrelated to federal adjustments? Such a result is completely inconsistent with the context of all these extended statute of limitations and the purpose for their existence.

GMAC contends that, because subsections (B)(5) and (6) of A.R.S. section 42–113 apply only to Arizona income tax deficiencies that result from IRS adjustments, the legislature must have intended for section 42–113(B)(7) to apply only to assessments based on the same kinds of deficiencies. Here, however, the statute expressly extends "the period for mailing a notice of a proposed [Arizona] income tax deficiency" whenever the taxpayer and the IRS agree to an extension of the federal assessment limitation period for the same tax year. A.R.S. § 42–113(B)(7). The

state assessment extension arises solely as a result of the agreement between the taxpayer and the IRS. The statute does not make a state tax assessment or adjustment dependent on or limited by the IRS's decision to make adjustments in the taxpayer's federal tax assessment.

The legislature was familiar with the language necessary to extend the state assessment period when a federal income tax adjustment produces a state income tax deficiency whose assessment would otherwise be time-barred. Subsections (B)(5) and (B)(6) clearly evidence the legislature's intent to achieve that result.[1] The legislature used no such language in subsection (B)(7).

■ In Arizona, the language of an unambiguous statute is conclusive unless the legislature clearly expresses an intent to the contrary. *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). Arizona courts will apply the rules of construction to vary from the plain meaning of a statute only if necessary to effectuate the legislature's clearly expressed contrary intent or to avoid an absurd result that the legislature could not in any event have intended. *See Resolution Trust Corp. v. Western Technologies, Inc.*, 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994); *Tittle v. State*, 169 Ariz. 8, 9, 816 P.2d 267, 268 (App.1991). Our supreme court has stated:

> [W]e follow fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the

---

1. Arizona Revised Statutes Annotated section 42–113(B) provides:

   5. If a taxpayer fails to report a change or correction by the commissioner of internal revenue or other officer of the United States or other competent authority or fails to file an amended return as required by § 43–327, the department may assess any deficiency *resulting from such adjustments* within four years after the change, correction or amended return is reported to or filed with the United States internal revenue service regardless of any previous examinations by the department.

   6. If a taxpayer is required to report a change or correction by the commissioner of internal revenue or other officer of the United States or other competent authority or to file an amended return as required by § 43–327 and does report the change or files the return, any deficiency *resulting from the adjustments* may be assessed within six months from the date the notice of amended return is filed with the department by the taxpayer, or within the period provided in subsection A of this section or paragraph 1 or 2 of this subsection, whichever period expires last.
   (Emphasis added.)

statute's construction. Therefore, if we find no ambiguity in the statute's language, we must give effect to that language and we may not employ other rules of construction to interpret the provision. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) (citations omitted). Where the legislature has used a particular term in one place in a statute and has excluded it in another place in the same statute, a court should not read that term into the provision from which the legislature has chosen to omit it. *Dunlop v. First Nat'l Bank of Arizona,* 399 F.Supp. 855, 856 (D.Ariz.1975).

█ Nothing in A.R.S. section 42–113 expresses a clear legislative intent contrary to the interpretation advocated by ADOR. The legislature might well have concluded that where a taxpayer has consented to extend the time during which the IRS may investigate and analyze the taxpayer's records and return from a particular tax year, it is reasonable to accord ADOR a similar extension for that tax year regardless of whether the two agencies pursue the same lines of inquiry. The question whether that conclusion was wise or fair or reasonable is for the legislature, not the courts.

The cases from other jurisdictions on which GMAC relies to support its construction of A.R.S. section 42–113(B)(7) are inapposite. In *Kelly–Springfield Tire Co. v. Iowa State Board of Tax Review,* 414 N.W.2d 113 (Iowa 1987), *aff'd sub nom., Shell Oil Co. v. Iowa Dep't of Revenue,* 488 U.S. 19, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988), the statute in question gave the Iowa Department of Revenue six months to conduct its own examination and make a determination regarding the taxpayer's state tax liability following notice from a taxpayer of the final disposition of any matter between the taxpayer and the IRS. The Iowa court applied the principle that a court must not only consider the language used in a statute, but must also take into account the objective sought to be accomplished and arrive at a construction that will best effect the legislature's purpose. 414 N.W.2d at 115. The court agreed with the taxpayer that an exception to a general limitations period that is triggered by a particular event must be interpreted as relevant to

that event. *Id.* It held that the statute in question evidenced an intent that the department's authority be restricted to matters pertaining to actions taken in the federal audit that alter some basic premise on which the taxpayer's state tax liability was initially reported. *Id.*

In contrast to the statute at issue in *Kelly–Springfield,* A.R.S. section 42–113(B)(7) does not provide for a discrete six-month assessment period that begins upon ADOR's receipt of notice that a federal audit has altered the taxpayer's federal tax liability. Instead, section 42–113(B)(7) provides that when a taxpayer enters into an extension agreement with the IRS, a concurrent extension of the state assessment limitation commences, and that extension lasts during the entire agreed federal extension and ends six months thereafter. The extension arises under A.R.S. section 42–113(B)(7) regardless of whether the federal audit yields any tax adjustment. Although the Iowa court evidently regarded the Iowa statute as ambiguous and subject to judicial construction, *id.,* we do not find A.R.S. section 42–113(B)(7) to be ambiguous.

*McLean Trucking Co. v. Lindley,* 70 Ohio St.2d 106, 435 N.E.2d 414 (1982), is also distinguishable. In *McLean,* the statute required taxpayers to report any federal income tax adjustments and limited the period for additional state assessments to three years "after the final date as of which *the report subject to assessment* was required to be filed." *Id.* 435 N.E.2d at 417 (emphasis added). The Ohio statute expressly made the taxpayer's federal income tax adjustment report subject to assessment only during the three-year period. *Id.* The court understandably held that assessments during that period were limited to those occasioned by the federal adjustments. *Id.*

In *Commonwealth v. Lukens Steel Co.,* 402 Pa. 304, 167 A.2d 142 (1961), the taxpayer wanted to use a federal audit change as a basis for reopening a closed state tax return in order to take advantage of a state tax benefit that it had not timely claimed. The court's opinion does not reveal the language of the statute, and the case is not useful in interpreting A.R.S. section 42–113(B)(7).

We conclude that the tax court did not err in sustaining the timeliness of ADOR's February 6, 1990 assessment against GMAC.

## II. *Retroactive Application of Arizona Sand & Rock*

GMAC contends that even if ADOR's assessment was not time-barred, the method for calculating the state tax deduction for federal taxes paid by a multistate concern adopted in *Arizona Sand & Rock Co.* should not be retroactively applied. *Arizona Sand & Rock* itself forecloses this contention. The taxpayer in that case argued that the case was moot because the supreme court's holding would apply prospectively only. *Id.* at 64, 745 P.2d at 122. The court rejected the argument stating:

> It is true that we have held that "in tax matters—when a previous decision is overruled—the new decision is given prospective effect only." *Arizona State Tax Comm'n v. Ensign,* 75 Ariz. 376, 376, 257 P.2d 392, 392 (1953). That principle has no application in this case since we are not overruling any prior decision.

155 Ariz. at 64, 745 P.2d at 122. The court went on to remand the case with directions to calculate the taxpayer's deduction in accordance with its holding and enter judgment accordingly. *Id.* at 65, 745 P.2d at 123. The court's holding is equally applicable to GMAC.

## III. *A.R.S. section 42–113(B)(7) and Arizona Constitution article 9, section 1*

GMAC argues that by enacting the statute of limitations at A.R.S. section 42–113, but allowing A.R.S. sections 42–113(B)(5)(7) to be based on the operations of the related federal statute of limitations, the legislature has surrendered some of the state's power, thus violating article 9, section 1 of the Arizona Constitution. We disagree.

Arizona Revised Statutes Annotated section 42–113(B)(7)[2] is a statutory limitations provision. It does not surrender the state's power to tax. *Cf. Climate Control, Inc. v. Hill,* 86 Ariz. 180, 342 P.2d 854 (1959),

*aff'd as mod.,* 87 Ariz. 201, 349 P.2d 771 (1960) (holding statute that levied a premium tax on self-insurers in amount to be "computed and collected" by the Industrial Commission was an unconstitutional attempt to delegate power to tax). Instead, it extends the time within which the state may assess a tax deficiency where the taxpayer has agreed to extend the time within which the IRS can assess a federal tax deficiency. As ADOR points out, A.R.S. section 42–113(B)(7) depends not on any federal legislation, but rather on voluntary action by the taxpayer. Unlike the situation in *Cheney v. St. Louis Southwestern Railway Co.,* 239 Ark. 870, 394 S.W.2d 731 (1965), a case on which GMAC relies, A.R.S. section 42–113(B)(7) clearly does not delegate to a federal agency the determination of the amount of a corporate taxpayer's taxable net income for state tax purposes.

## IV. *ADOR's Request for Attorney's Fees under ARCAP 25*

ADOR asks that we assess attorney's fees against GMAC under ARCAP 25. The determination to award or decline attorney's fees is within this Court's discretion. We choose not to award fees in this case.

Affirmed.

TOCI and WEISBERG, JJ., concur.

---

**2.** Although GMAC's constitutional challenge extends to subsections (B)(5) and (B)(6) of section 42–113, these subsections are inapplicable here, and we consider only the challenge to A.R.S. section 42–113(B)(7).