Bd. of Trustees of Ohio State Univ. et al., Appellants,
*v.* Dept. of Administative Services et al., Appellees.
The State, ex rel. Spaulding, Appellee, *v.* Enarson,
President, Ohio State Univ., et al., Appellants.
The State, ex rel. Allen, Appellee, *v.*
Ohio State Univ. et al., Appellants.
The State, ex rel. Artrip, Appellee, *v.*
Bd. of Trustees of Ohio State Univ. et al., Appellants.

(Nos. 81-78, 79, 80 and 81—Decided December 16, 1981.)

150

*Mr. William J. Brown,* attorney general, *Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach* and *Mr. Larry R. Thompson,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Michael H. Igoe, Mr. David H. Beaver* and *Mr. Samuel D. Orbovich,* for appellee Dept. of Admin. Services.

*Mr. Herschel M. Sigall,* for appellee Spaulding.

*Mr. John J. Gideon,* for appellee Allen.

*Mr. Barry W. Epstein,* for appellee Artrip.

CLIFFORD F. BROWN, J.  R. C. Chapter 119 governs the procedure an agency must follow when adopting any rule. Those requirements, enumerated in R. C. 119.03, include public notice, filing with the executive and legislative branches of government, public hearing, and notification of persons especially affected by the rule.

The procedure outlined in R. C. Chapter 119 applies only to bodies fitting the definition of "agency" as contained in R. C. 119.01(A).[1] That section defines "agency" in three ways. First, the definition specifically includes certain named bodies. Among these is "the civil service commission," the functions, powers and duties of which now devolve upon the Director of Administrative Services. See R. C. 124.02. The second category includes any administrative or executive body specifically made subject to R. C. 119.01 to 119.13. The third group includes administrative bodies vested with the licensing function. The definition also excludes certain named agencies from its coverage. The university is not a specifically excluded body.[2]

We find that university is not an "agency" within the meaning of R. C. 119.01(A), since it is not vested with a licensing function, and is not specifically made subject to R. C. Chapter 119, either in the definitional section or elsewhere in that chapter. This conclusion, however, does not mean the university can never be subject to the provisions of the Administrative Procedure Act. Where, as here, the university

[1] R. C. 119.01(A) provides, in relevant part:

" 'Agency' means, except as limited by this division, any official board, or commission having authority to promulgate rules or make adjudications in * * * the civil service commission, * * * the functions of any administrative or executive officer, department, division, bureau, board, or commission of the government of the state specifically made subject to sections 119.01 to 119.13 of the Revised Code, and the licensing functions of any administrative or executive officer, department, division, bureau, board, or commission of the government of the state having the authority or responsibility of issuing, suspending, revoking, or cancelling licenses. * * *"

[2] We reject the argument that the exclusion of state-supported colleges or universities from the definition of "rule making agency" in R. C. 119.01(I) exempts those institutions from the operation of R. C. Chapter 119 for all purposes. That language, only recently incorporated into the statute, merely exempts universities from the requirements of filing proposed rules, amendments or recisions with the Clerk of the Senate for joint committee review. See 137 Ohio Laws 2230, 2234. The term "rule making agency" appears only in the context of this legislative review provision. See R. C. 119.03(I). Any broader implications from this exclusion are unwarranted.

acts as an appendage of an agency within the definition of R. C. 119.01(A), it must comply with the duties imposed on that agency just as the agency would be bound.[3]

Therefore, the judgment of the Court of Appeals in case No. 81-78 is affirmed.

The rules promulgated by the university board of trustees which are the basis for the mandamus actions concern the classified civil service. R. C. Chapter 124 governs this area, applying to all classified state employees, including employees of state universities. The Department of Administrative Services (DAS), by virtue of R. C. 124.09(A) and 124.20, is empowered to prescribe and enforce rules governing the classified civil service. Such rules must be promulgated in compliance with the procedure outlined in R. C. Chapter 119, since the DAS is named as an "agency" in R. C. 119.01(A).

While R. C. Chapter 124 vests the DAS and the board of review with supervisory power over the classified civil service, R. C. 124.14(G)[4] grants to the personnel departments of state

---

[3] We reach this conclusion having duly considered the implications of *Karrick* v. *Bd. of Education* (1963), 174 Ohio St. 467, paragraph two of the syllabus, which held that a municipal civil service commission is not subject to the provisions of the Administrative Procedure Act when promulgating rules. Judge Gibson, writing for an unanimous court, noted that R. C. Chapter 119 covers only state level government agencies, not municipal bodies. Judge Gibson also quoted the relevant statute, now R. C. 124.40, giving the municipal commissions powers "not inconsistent with" those granted the DAS (then Director of State Personnel) and the board of review. The grant of powers to municipal commissions, substantially unchanged since the original 1913 legislation, is a total delegation of authority, granting the power to prescribe, amend and enforce rules governing appointments, transfers, layoffs, suspensions, reductions and reinstatements of municipal employees, and conferring the authority to "exercise all other powers and perform all other duties with respect to the civil service" of the city, its school and health districts. Such complete delegation differs in kind from that assigned to the personnel departments of universities in R. C. 124.14(G), discussed *infra*, whose exercise of authority continues to be subject to approval by the board of review. And since universities are state-level bodies, they may logically be encompassed in the procedure set forth in R. C. Chapter 119. See *Karrick, supra,* at page 469.

[4] R. C. 124.14(G) provides:

"With respect to officers and employees of state supported colleges and universities[,] except for the powers and duties of the state personnel board of review, the powers, duties, and functions of the department of administrative services and the director of administrative services specified in Chapter 124 of the Revised Code are hereby vested in and assigned to the personnel departments of such colleges and

universities the authority to exercise the "powers, duties, and functions" of the DAS over university employees in the classified civil service. The statutory provision specifically excludes from this delegation the powers of the board of review, and requires the DAS to reestablish its authority should the university misuse or apply nonuniformly the powers granted.

Among the powers granted to the DAS is the authority to divide the state into civil service districts. See R. C. 124.21. By virtue of R. C. 124.14(G), that power is assigned to the Ohio State University, which has developed rules dividing itself into 18 districts.[5]

In promulgating these rules the university erred in several respects. First, such rules should have been issued by the personnel department of the university, as required in R. C. 124.14(G). Second, such rules should have been promulgated in compliance with the procedural requirements of R. C. Chapter 119, since the university's power to issue the rules derives from the DAS, an agency subject to the Administrative Procedure Act. By issuing the rules under the aegis of the board of trustees, and by failing to comply with R. C. Chapter 119, the university improperly exercised the power granted in R. C. 124.14(G). The board of review cor-

---

universities, subject to a periodic audit and review by the director of administrative services to guarantee the uniform application of this granting of his powers, duties, and functions. Upon the determination or finding of the misuse or nonuniform application of this authority granted to the personnel department of such state supported colleges and universities, the director of administrative services shall order and direct the personnel functions of such institution until sections 124.01 to 124.64 of the Revised Code have been fully complied with.***"

[5] The university contends, in case No. 81-78, that the rules were issued under the general authority to promulgate rules of governance, as contained in R. C. 3335.08. That section, in language dating to the original 1870 legislation (67 Ohio Laws 20) creating the Ohio Agricultural and Mechanical College (the original name of the Ohio State University), provides that the board of trustees "may adopt bylaws, rules and regulations for the government of the university." This grant predates the establishment of the civil service system by over 40 years, and can not be held to encompass promulgation of rules regulating such employees. The General Assembly specifically granted all state universities limited jurisdiction over these matters in R. C. 124.14(G). To the extent the specific provisions of that section conflict with the general grant of power in R. C. 3335.08, the later and special provision must prevail. See R. C. 1.51 and 1.52. Accordingly, we conclude the rules here were issued under the authority of R. C. 124.14(G), the later and special provision governing civil service employees of all state universities.

rectly refused to approve such improperly promulgated rules.[6]

The university rules are of no effect, since they were disapproved by the board of review. Therefore, the layoffs made under their authority were improper,[7] entitling appellees to reinstatement and such other relief as the Court of Appeals may order.

Although procedurally defective, this court finds nothing inherent in the rules themselves which would warrant their disapproval by the board of review, assuming the university complies with the procedural requirements of R. C. Chapter 119. The Court of Appeals below in cases Nos. 81-79, 80 and 81, essentially held that division of the university into 18 separate districts conflicted with R. C. 124.32(E)(3).[8] That provision

---

[6] The university asserts that the approval of the board of review is not necessary for these rules to be effective, citing language in R. C. 124.09(A). That section provides, in relevant part:

"***Except in the case of rules adopted pursuant to section 124.14 of the Revised Code, the prescription, amendment, and enforcement of rules under this division are subject to approval, disapproval, or modification by the state personnel board of review."

It is apparent from the context of this statement that approval by the board of review is the normal prerequisite to enforcing any rules governing the classified civil service. See, also, R. C. 124.20. The language quoted above provides an exception for rules modifying job classifications, which require the approval of the State Employee Compensation Board. See R. C. 124.14(A) through (E). Review of those rules requires the expertise of the special body created pursuant to R. C. 124.16. A second review by the board of review would be superfluous. This exception does not include non-compensation-related rules instituted by universities under authority of division (G) of R. C. 124.14. The clear intent of the General Assembly was to subject universities to continuing supervision by both the board of review and the DAS, as evidenced by the limited grant of powers and the proviso concerning abuse of those powers in R. C. 124.14(G).

[7] The parties stipulated that, absent the rules issued by the university board of trustees, such layoffs are improper, presumably since the appellees were entitled to bump persons with less seniority under the rules of the DAS.

[8] R. C. 124.32(E) provides, in relevant part:

"The order of layoffs of divisions (C) and (D) of this section applies within each of the following layoff jurisdictions:

"***

"(3) University jurisdiction, the order of layoff within state-supported universities will be followed within each individual university.

"***

"Each of the layoff *jurisdictions* is considered an autonomous unit and layoff procedures will apply only within the *jurisdiction* affected by the layoff.

"The director of the department of administrative services shall establish layoff *districts*." (Emphasis added.)

establishes the order of layoffs for university jurisdictions, mandating only that the order of layoffs be followed *within each individual university*. Nothing in the provision prevents universities from further dividing themselves into separate districts. It merely states that each university constitutes a separate jurisdiction, with the employee laid off in one university having no privileges affecting employees in another university. The action of the university dividing itself into separate districts does not conflict with the statutory mandate of R. C. 124.32(E).[9]

As modified, the judgment of the Court of Appeals is affirmed in cases Nos. 81-79, 80 and 81.

*Judgment accordingly.*

CELEBREZZE, C. J., W. BROWN, SWEENEY and HOLMES, JJ., concur.

LOCHER, J., concurs in the judgment.

KRUPANSKY, J., dissents.

---

[9] The DAS has adopted Ohio Adm. Code 123:1-41-02(C), which provides:

"Each state-supported university is a separate layoff jurisdiction and branch campuses are deemed separate layoff jurisdictions."

This clarification of R. C. 124.32(E) does not conflict with the proposed university rules. It, too, is limited to the statement that separate universities constitute separate *jurisdictions* for purposes of layoffs, and does not address whether division into separate *districts* is proper. We conclude such a division is proper.