MCLEAN TRUCKING COMPANY, APPELLEE AND CROSS-APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

(No. 81-1423—Decided May 26, 1982.)

*Messrs. Porter, Wright, Morris & Arthur, Mr. Roger F. Day* and *Mr. Leonard A. Carlson,* for appellee and cross-appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Charles M. Steines,* for appellant and cross-appellee.

*Per Curiam.* The two critical issues in this case concern the three-year limitations period for assessments made by the commissioner, pursuant to R. C. 5733.11, and the commissioner's calculation of appellee's sales factor, pursuant to R. C. 5733.05 and Special Instruction 21. We shall consider these issues *seriatim.*

### I.

*Statute of Limitations: Tax Years 1973-1976.*

R. C. 5733.11, which sets forth the three-year limitation for assessments, provides, in pertinent part:

"When any corporation required to file a report by this chapter fails to file such report within the time prescribed, files an incorrect report, or fails to remit the full amount of the tax due for the period covered by the report, the tax commissioner may make an assessment against such corporation for the period for which such report or tax is due, based upon any information in his possession. The commissioner shall give the corporation against whom such assessment is made written notice of such assessment by personal service or certified mail.

*"No such assessment shall be made or issued against a taxpayer more than three years after the final date as of which such report subject to assessment was required to be filed, provided that there shall be no bar or limit to an assessment against a taxpayer that failed to file the report subject to assessment as required by this chapter."* (Emphasis added.)

In other words, R. C. 5733.11 bars the commissioner from issuing an assessment against the taxpayer more than three years after the final date as of which *the report subject to assessment* was required to be filed with the commissioner. By the same reasoning, however, R. C. 5733.11 eliminates any bar to an assessment against the taxpayer that fails to file *the report subject to assessment* pursuant to R. C. Chapter 5733.

The fundamental question posed by appellee is whether the assessment issued insofar as it pertains to increases in its

1973 through 1976 franchise tax obligation *unrelated* to the corrections made by the IRS is barred by R. C. 5733.11. For the reasons that follow, we conclude that the limitations period of R. C. 5733.11: (1) is an absolute bar insofar as the instant assessment pertains to increases in appellee's 1973 through 1976 franchise tax obligation *unrelated* to the corrections made as a result of the IRS audit; and (2) does not preclude the instant assessment insofar as it pertains to increases in appellee's 1973 through 1976 franchise tax obligation *related* to the corrections made as a result of the IRS audit.

Pursuant to R. C. 5733.031(C),[2] appellee, subsequent to the audit and assessment of the IRS, was statutorily obligated to notify the commissioner of the aforementioned federal alterations by filing an amended franchise tax report within 120 days after the federal alterations became final. As the record reveals, appellee failed to file an amended franchise tax report with the commissioner for the tax years 1973 through 1976.

Thus, our inquiry narrows to the question of whether the failure to file an amended franchise tax report constitutes a failure to file a report, for R. C. 5733.11 purposes, thus rendering inapplicable the statutory time limitation to which assessments are restricted.

After a careful review of the precise language of R. C. 5733.11, we conclude that the "reports" anticipated by this section include annual reports and amended reports. In this cause, however, the "reports" which the taxpayer "fail[ed] to file * * * [which are] subject to assessment," are the amended reports, not the annual franchise tax returns. Therefore,

---

[2] "(C) If the taxable income, any item of income or deduction, or the income tax liability, reported in a corporation's federal income tax return that is used to determine the corporation's tax under this chapter is altered by amendment of such return or as a result of any other recomputation or redetermination of federal taxable income or loss, by the corporation or the internal revenue service, and such alteration reflects a change or settlement that affects such corporation's tax liability under this chapter, such corporation shall notify the tax commissioner of such alteration.

"Such notification shall be in the form of an amended return or such other form as the tax commissioner requires, and shall be filed with the tax commissioner not later than one hundred twenty days after such alteration has been agreed to or finally determined for federal income tax purposes or any federal income tax deficiency or refund, or the abatement or credit resulting therefrom, has been assessed or paid, whichever occurs first."

when, after the federal audit and assessment, appellee failed to file the amended franchise tax reports with the commissioner, appellee was in violation of R. C. 5733.11, thus suspending the three-year ban to any state assessment *related* to the federal adjustments.

We categorically reject, as impractical, appellant's contention that, if a taxpayer fails to file an amended franchise tax report, there is *no* bar or *no* time limit to the assessment which may be issued. The wholesale re-opening of a taxpayer's reports on such an unrestricted basis would impede the attainment of the goals of certainty and finality in tax planning and tax collection—for both the taxpayer and the Tax Commissioner.

In light of the foregoing analysis, therefore, we conclude that only the amended reports for the tax years 1973 through 1976 are subject to assessment. The taxpayer's annual reports, which have already been filed and are subject to the three-year limitation of R. C. 5733.11, may not now be re-opened, *except* for the limited purpose of rendering an assessment with respect to the federal corrections that would have been reflected if the amended reports had been timely filed. Thus, we affirm that part of the board's order which: (1) permitted the $1,270.50 deficiency assessment and (2) disallowed the $208,619.67 deficiency assessment.

## II.

*Computation of Appellee's Sales Factor for Tax Year 1977.*
In its cross-appeal, appellee has challenged the commissioner's computation of the sales factor, pursuant to R. C. 5733.05, for the tax year 1977.

R. C. 5733.05(B) sets forth an apportionment formula for determining the amount of net income which a corporation engaged in interstate commerce shall allocate to Ohio, based on three factors: property, payroll and sales.[3]

R. C. 5733.05(B)(2)(c) provides in pertinent part:

"* * * [A] fraction the numerator of which is the value of business done, measured by sales of tangible personal property in this state by the corporation during the taxable year, and the denominator of which is the total value of its business done, measured by sales of tangible personal property by the

---

[3] Pursuant to R. C. 5733.05, appellee is a net income taxpayer.

corporation everywhere during such year. * * *
"* * *

"Sales, other than sales of tangible personal property, are in this state if either:

"(i) The income-producing activity is performed in this state;

"(ii) The income-producing activity is performed both within and without this state and a greater proportion of the income-producing activity is performed within this state than in any other state, based on costs of performance. * * *"

Additionally, R. C. 5733.05(B)(2)(d), an exception to R. C. 5733.05(B)(2)(a), (b) and (c), provides that if the foregoing three-factor formula does not fairly represent the extent of the taxpayer's business activity in Ohio, the commissioner may require a separate accounting, the exclusion of one or more factors, or the inclusion of one or more factors in order to represent the taxpayers allocated or apportioned base in this state.

Specifically, R. C. 5733.05(B)(2)(d) provides:

"If the allocation and apportionment provisions of division (B) of this section do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may request, * * * or *the tax commissioner may require, in respect to all or any part of the taxpayer's allocated or apportioned base, if reasonable, any one or more of the following:*

"(i) Separate accounting;

"(ii) *The exclusion of any one or more of the factors;*

"(iii) *The inclusion of one or more additional factors which will fairly represent the taxpayer's allocated or apportioned base in this state.*

"*An alternative method will be effective only with approval by the tax commissioner.*" (Emphasis added.)

Resolution of appellee's challenge to the commissioner's computation of its sales factor necessarily entails deciding: (1) whether the commissioner, in apportioning appellee's revenues through the system-wide mileage ratio of Special Instruction 21, properly proceeded under R. C. 5733.05(B)(2)(d); and (2) whether Special Instruction 21 constitutes an administrative rule which was promulgated in accordance with R. C. 119.03 and 5703.14.

During the course of appellee's audit, the commissioner

discovered that appellee was equally allocating income for freight transportation between the state in which the shipment originated and the state in which the shipment terminated. This allocation method failed to apportion income to those states through which appellee transported freight. To remedy this unrepresentative allocation, the commissioner, by means of Special Instruction 21, reapportioned appellee's revenues by employing a sales factor based on a system-wide mileage ratio.

After having considered and evaluated the arguments advanced by all the litigants at bar, we conclude, for the reasons that follow, that: (1) the commissioner, in apportioning appellee's revenues through the system-wide mileage ratio of Special Instruction 21, did not properly proceed under, or in compliance with, R. C. 5733.05 (B)(2)(d); and (2) Special Instruction 21 is an administrative rule which was not promulgated in accordance with R. C. 119.03 and 5703.14 and is, therefore, invalid.

Initially, it is imperative to note that R. C. 5733.05 (B)(2)(d) furnishes no authority for the commissioner's apportionment of appellee's sales factor pursuant to Special Instruction 21. More precisely, R. C. 5733.05(B)(2)(d), by its express language, contemplates a customized, individualized allocation, tailored to each taxpayer on a case-by-case basis, when the three-factor formula of R. C. 5733.05(B)(2)(a), (b) and (c) does not fairly represent the extent of the taxpayer's business activity in Ohio. Clearly, Special Instruction 21 which, by its own terms, applies to all interstate carriers in a general, across-the-board, all-encompassing manner, does not reflect the particularized apportionment approach which, in our view, the General Assembly intended the Tax Commissioner to employ in calculating the franchise tax liability for corporations not embraced by R. C. 5733.05(B)(2)(a), (b) or (c). As such, we find that Special Instruction 21 was not authorized by R. C. 5733.05(B)(2)(d).

Furthermore, we find that Special Instruction 21 is the functional equivalent of an R. C. 119.01(C) rule, the terms of which could only have been properly issued as a rule.

More specifically, pursuant to R. C. 119.01(C):

" 'Rule' means any rule, regulation, or standard, having a

general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency, but it does not include regulations concerning internal management of the agency which do not affect private rights."

Applying this definition to Special Instruction 21, it is immediately apparent that the subject-matter of Special Instruction 21 is, as a practical matter, the subject-matter of a rule because Special Instruction 21: (1) articulates a general and uniform apportionment method for all interstate transportation companies, and (2) is being enforced under the authority of the laws governing the department of taxation.[4]

Since the terms of Special Instruction 21 could only have been promulgated as a rule, the focus of our inquiry becomes whether Special Instruction 21 was promulgated in compliance with R. C. 5703.14 and 119.03.

R. C. 5703.14 provided[5] that;

"No rule * * * of the department of taxation adopted by the tax commissioner shall be effective until the tenth day after it is * * * [filed] in the office of the secretary of state.

"* * *

"Applications for review of any rule adopted and promulgated by the commissioner may be filed * * * [by certain parties] after the rule is filed in the office of the Secretary of State. * * *"

R. C. 119.03 mandated[6] 30 days public notice of an agency's intention to promulgate a rule and further required that a proposed rule be filed with: (1) the Director of the Legislative Reference Bureau, (2) the Clerk of the Senate, and (3) the Legislative Clerk of the House of Representatives.

In issuing Special Instruction 21 on January 1, 1977, the

---

[4] The Department of Taxation is an "agency", as that term is defined in R. C. 119.01(A), and was an "agency" on January 1, 1977 (see Am. Sub. H. B. No. 920, effective October 11, 1976 [136 Ohio Laws 3182, 3183]).

[5] These provisions reflect the version of R. C. 5703.14 which was in effect on January 1, 1977—the issue date of Special Instruction 21. (See Am. Sub. H. B. No. 920, at 3222.) R. C. 5703.14 has been subsequently amended to impose additional requirements upon the commissioner in the promulgation of rules.

[6] These provisions reflect the version of R. C. 119.03 which was in effect on January 1, 1977. (See Am. Sub. H. B. No. 317, effective September 30, 1976 [136 Ohio Laws 2399, 2401].)

commissioner did not file it with the Secretary of State, the Director of the Legislative Reference Bureau, the Clerk of the Senate or the Legislative Clerk of the House of Representatives. The commissioner also failed to give any public notice of Special Instruction 21's proposed issuance. As such, the failure of the commissioner to promulgate Special Instruction 21 in accordance with the dictates of R. C. 119.02[7] renders Special Instruction 21 invalid. See, also, *Bd. of Trustees* v. *Dept. of Admin. Services* (1981), 68 Ohio St. 2d 149 (rules adopted by an agency in violation of the required statutory procedures are invalid and of no effect).

Thus, we reverse that part of the board's decision upholding the commissioner's employment of Special Instruction 21 to calculate appellee's franchise tax liability.

For all of the foregoing reasons, the decision of the board is affirmed in part and reversed in part. The cause is remanded for further proceedings not inconsistent with this opinion.

*Decision affirmed in part
and reversed in part,
and cause remanded.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

---

[7] R. C. 119.02 provides:

"Every agency authorized by law to adopt, amend, or rescind rules shall comply with the procedure prescribed in sections 119.01 to 119.13, inclusive, of the Revised Code, for the adoption, amendment, or rescission of rules. Unless otherwise specifically provided by law, the failure of any agency to comply with such procedure shall invalidate any rule or amendment adopted, or the recission of any rule."