## Browning-Ferris Industries of Ohio, Inc.
### v.
### Mahoning Co. Bd. of Health
*[Cite as 6 AOA 302]*

*Case No. 89AP-619*
*Franklin County, (10th)*
*Decided August 9, 1990*

*Daniel J. Gunsett, William W. Falsgraf and Ronald S. Okada, Baker & Hostetler, for Appellant.*

*Tim Tusek, for Appellee.*

WHITESIDE, J.

Appellant, Browning-Ferris Industries ("BFI"), appeals an order of the State Environmental Board of Review ("EBR"), and raises the following assignment of error:

"The Ohio Environmental Board of Review erred in affirming Final Orders #285 and #286, issued by Appellee Mahoning County Board of Health on December 22, 1988."

BFI owns and operates a solid waste disposal facility located in Mahoning County. This facility has been in operation since 1963 and had consistently received an annual operating license until December 1987 when appellee, Mahoning County Board of Health ("board"), issued two proposed orders relating to BFI's application for a 1988 operating license.

Board Order number 285 ordered BFI to "*** reduce its intake at its *** [facility] to within 2,500 cu. yd/day. This order is a Proposed Order which shall become a Final Order thirty days after mailing." Board order number 286 stated that because BFI had been operating at a daily intake level which far exceeded the limit of two thousand five hundred cubic yards per day, BFI was being denied a 1988 operating license. In other words, the alleged violation which prevented BFI from obtaining an operating license for 1988 was a violation of a volume limit which had first been set in the previous order number 285, which by its terms was not yet effective when the operating permit was denied.

Following the issuance of these orders, BFI requested a hearing before the board which was subsequently held September 19, 1988. A hearing officer of the board recommended that the board's decision be affirmed and, on December 22, 1988, the board voted to approve both orders, making them final.

BFI appealed those orders to the EBR. A hearing was held on February 14, 1989. On May 10, 1989, after issuing findings of fact and conclusions of law, the EBR held that the final orders of the board were both reasonable and lawful and, therefore, the volume limitation was affirmed as was the 1988 license denial. It is from this decision which BFI now appeals.

R.C. 3745.06 provides that upon appeal to this court from an order of the EBR, this court shall affirm the decision if it "*** is supported by reliable, probative, and substantial evidence and is in accordance with law. *** " Due deference is to be given to the administrative agency's determination of conflicts in the evidence. See *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St. 2d 192, 200; and *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St. 2d 108, 111. Thus, although a limited weighing of evidence is involved, this court will not conduct a *de novo* review of the EBR's decision but, rather, will determine whether that decision is supported by evidence which is reliable, probative and substantial.

Prior to addressing BFI's contentions, a review of the applicable law as of December 1987 (the time when the board issued the proposed orders) is necessary. R.C. 3734.05(A), as it existed December 1987, provided, in pertinent part:

"No person shall operate or maintain a solid waste facility without a license issued by the board of health of the health district in which the facility is located."

At that time, Ohio Adm. Code 3745-37-03(A) stated that a board of health should not issue an operating license unless a permit to install ("PTI"), if required, had been obtained. A PTI was required in December 1987 if the solid waste disposal facility underwent an increase of greater than fifty percent or a minimum of three hundred tons in its average daily waste receipts. See Ohio Adm. Code 3745-31-01(I)(2)(c) and 3745-31-02(A) as in effect in December 1987.

Both parties rely upon statutes and regulations which were changed after the 1987 license denial. R.C. 3734.05(A) was amended by H.B. No. 592, effective June 24, 1988, to authorize individual boards of health to set daily maximum waste receipts for each facility. Section 6(C) (1) of H.B. No. 592 further provided that:

"*** during the period of one year after the effective date of this act *** no owner or operator of a solid waste facility shall dispose of any solid wastes *** in excess of the maximum daily amount specified for the month of March, 1988 *** ."

Ohio Adm. Code 3745-31-01, defining "modify," was amended effective June 12, 1989, to reflect these changes. PTI's are now required if

the facility is undergoing a change in the established authorized maximum daily waste receipts.

However, all of these amendments and changes are not relevant to our consideration herein as we must apply the law in existence at the time of the board's proposed orders--December 1987. See *Gibson v. Oberlin* (1960), 171 Ohio St. 1.

Turning to appellant's assignment of error, in proposed order number 286, the board stated that BFI was being denied an operating license for 1988 because it was exceeding the two thousand five hundred cubic yards per day limit set by the board in order number 285. In its brief, the board further contends that BFI was not in substantial compliance with the regulations governing solid waste disposal facilities in that BFI increased its daily waste receipts by more than fifty percent without first obtaining a PTI. Therefore, the board contends the license denial was justified.

BFI, on the other hand, contends that the board did not, in 1987, have the authority to impose a daily waste receipt limit and, further, that the board's order denying the 1987 operating license was erroneous. BFI contends that no PTI was required because it was a "grandfathered site" and more importantly that the EPA had previously stated that BFI need not obtain a PTI.

We turn first to the issue of whether the board had the authority in December 1987 to establish a maximum daily waste receipt limit for BFI. The board's express authority to issue the license stems from R.C. 3734.05(A) which, in December 1987, read in pertinent part:

"During the month of December, but before the first day of January of the next year, every person proposing to continue to operate an existing solid waste facility shall procure a license to operate the facility for that year from the board of health of the health district in which the facility is located. *** "

In addition, R.C. 3734.04 conferred certain powers upon the board of health by providing as follows:

"The board of health of each district shall provide for the inspection, licensing, and enforcement of sanitary standards for solid waste facilities in conformity with Chapter 3734. of the Revised Code.

"*** "

While it is true that R.C. 3734.05(A) did not expressly give the board such authority, there is still an issue as to whether the board had the implied authority to set such limit. Generally, an administrative agency or board such as the board of health has no greater power than that expressly conferred upon it and has no inherent power. See *Washington v. Public Utilities Comm.* (1918), 99 Ohio St. 70, 72.

However, as stated in *State, ex rel. Bentley & Sons Co., v. Pierce* (1917), 96 Ohio St. 44, at 47:

"Such grant of power, by virtue of a statute, may be either express or implied, but the limitation put upon the implied power is that it is only such as *may be reasonably necessary to make the express power effective.* In short, the implied power is only incidental or ancillary to an express power, and, if there be no express grant, it follows, as a matter of course, that there can be no implied grant." (Emphasis added.) See, also, *Burger Brewing Co. v. Thomas* (1975), 42 Ohio St. 377.

Thus, although such implied powers are limited to those "necessary to make the express power effective," they do exist. In *Bentley, supra,* a state statute expressly limited the amount of money county commissioners could spend on a public work. The court concluded that the intent of the legislature was clear and that intent was expressly to limit the amount of money expended. Although the court recognized the existence of implied powers of the board, it held that without the express grant to spend additional money, there could be no implied authority how to spend it.

Likewise, there was no implied authority in 1987 for county boards of health to set waste receipt limitations for facilities such as BFI. This conclusion follows from a' careful reading of other pertinent statutory provisions. In 1987, R.C. 3734.02(A) read in pertinent part:

"The director of environmental protection, in accordance with Chapter 119. of the Revised Code, shall adopt and may modify, suspend, or repeal rules having uniform application throughout the state governing solid waste facilities and the inspections and issuance of licenses for all solid waste facilities in order to ensure that the facilities will be located, maintained, and operated in a sanitary manner so as not to create a nuisance, cause or contribute to water pollution, create a health hazard, or violate 40 C.F.R. 257.3-2 or 40 C.R.F. 257.3-8, as amended. *** The director, in accordance with Chapter 119. of the Revised Code, shall adopt and may modify, suspend, or repeal rules governing the issuance, modification, revocation, suspension, or denial of variances from his solid waste rules. Variances shall be issued, modified, revoked, suspended, or

repealed in accordance with this division, rules adopted under it, and Chapter 3745. of the Revised Code. *** "

R.C. 3734.02(A) expressly provides that rules for solid waste facilities should be adopted by the director of environmental protection (not a district or county board of health) towards the end of uniformity throughout the state.

R.C. 3734.05(G)(1) further granted the director addition authority as it read in pertinent part:

"Each person who holds an installation and operation permit issued under this section and who wishes to obtain a permit renewal shall submit a completed application for an installation and operation permit renewal and any necessary accompanying general plans, detail plans, specifications, and such information as the director may require to the director no later than one hundred eighty days prior to the expiration date of the existing permit *** . The director shall consider the application and accompanying information, inspection reports of the facility, results of performance tests, a report regarding the facility's compliance or noncompliance with the terms and conditions of its permit and rules adopted by the director under this chapter, and such other information as is relevant to the operation of the facility and shall issue a draft renewal permit or a notice of intent to deny the renewal permit. ***"

Accordingly, it would be inconsistent with these provisions granting such authority to the director to imply that a district or county board of health, in 1987, had the authority to determine and establish a daily waste receipt limit for a solid waste facility. Such a limit may only be imposed if it and the basis therefor are established by a rule properly adopted by the director.

Furthermore, if the director chooses to adopt such rules, the procedural requirements of R.C. Chapter 119 (specifically R.C. 119.03) must be met. Failure to adopt rules in accordance with these procedural requirements renders the purported rule invalid. See R.C. 119.03 and *Bd. of Trustees v. Dept. of Admin. Services* (1981), 68 Ohio St. 2d 149, 153.

In 1987, the only regulation in effect relating to a daily waste receipt limit was Ohio Adm. Code 3745-31-01(I)(2)(c) concerning when a PTI was necessary. The director had not promulgated any other limits regarding daily waste receipt limits for solid waste disposal facilities.

It follows that while boards of health may have certain implied powers, one of those powers was not (in 1987) the authority to set daily waste receipt limits for a solid waste disposal facility. Such an implied power would have directly contravened the express authority of the director to adopt rules governing solid waste disposal facilities pursuant to the 1987 R.C. 3734.02(A). While there has been a subsequent change in the law which now authorizes boards of health to set daily waste receipt limits, in 1987, the boards did not have that authority. Accordingly, the Mahoning County Board of Health had no authority to set a daily waste receipt limit for BFI in 1987 in order number 285, and it was error for the EBR to affirm such order.

Turning to board order number 286, in which the BFI's 1988 operating license was denied, the issue becomes whether a volume limitation could be imposed as a condition of that license. While the board did not have the implied authority to set arbitrary limits, our analysis of whether the volume limitation is nevertheless valid does not end there because the evidence indicates that the EPA actually imposed the limit, not the board. In a letter written by Philip P. Rhodes, environmental engineer with the Ohio EPA, in November 1987, the board was informed that a daily waste receipt limit of two thousand five hundred cubic yards per day should be imposed upon BFI. Specifically, it concluded "*** [w]e are therefore asking your department to take appropriate regulatory action." The next paragraph reads as follows:

"This action would include formally notifying the landfill that they are in violation of OAC 3745-27-08(A) and OAC 3745-31-02(A). They must be required to drop back below the average daily volume of 2500 $yd^3$/day. The timetable to accomplish this is at your discretion, but should be as soon as practical. Failure to comply should result in appropriate enforcement action taken by your department. The landfill should also be informed that failure to comply, will jeopardize their upcoming 1988 license."

Furthermore, this letter indicated that BFI was aware of the problem and that a PTI would be required by the EPA. Therefore, the decision to impose a daily waste receipt limit originated with the Ohio EPA, not the board.

The next step is to determine if the action of the Ohio EPA imposing such a limit is a valid exercise of its authority. The limitation stems from BFI being in violation of both the 1982 and 1987 versions of Ohio Adm. Code 3745-31-019(I)(2)(c) *and* Ohio Adm. Code 3745-31-02(A)

which together required a PTI if a solid waste disposal facility increases its intake of average daily waste by more than fifty percent.

It is stipulated that BFI was in substantial compliance with all laws and regulations including any volume limitations prior to 1987. Because BFI tripled its average daily waste receipt during 1987 (BFI does not contend otherwise) without obtaining a PTI, it is contended that BFI in 1987 was not in substantial compliance with the regulations, as they permit only a fifty percent increase without first obtaining a PTI.

It is clear that BFI, by increasing its solid waste intake by at least two hundred forty-seven percent in 1987, violated Ohio Adm. Code 3745-31-01(I)(2)(c) and 3745-31-02(A) (in effect in 1987) in that the required PTI was not obtained. BFI contends that as a "grandfathered site," those regulations did not apply to it. However, if this argument is taken to its logical conclusion, BFI would not be subject to any waste receipt limitations, which would be clearly inappropriate. The EPA's action in calculating the two thousand five hundred cubic yards per day, based upon BFI's 1987 volume plus fifty percent, is reasonable under the circumstances.

Although the board of health handled it incorrectly, such a waste receipt limit could be imposed as a condition of BFI's 1988 operating license. Furthermore, in doing so, the board would not have exceeded its scope of authority. There is nothing in the statutes or regulations to prohibit the board from issuing a license which incorporates the existing law, follows the mandate of the EPA and, in essence, not only warns the facility of the potential consequences if the law is not complied with, but also limits use of the license to the limits established by law. It is permissible for the board to set forth in the license its interpretation of the applicable law as it applies to the facility.

If appellee had issued an operating license to BFI with the condition that BFI comply with the law (including its daily waste receipt limit), it would have been permissible. However, to issue a separate order setting forth such limit and then using that limit as a basis of denying BFI an operating license, was clearly erroneous. Accordingly, BFI's assignment of error is well-taken. However, this case is remanded with instructions to determine whether a conditional license should issue with the two thousand five hundred cubic yards per day volume limitation.

For the foregoing reasons, BFI's assignment of error is sustained, and the order of the Environmental Board of Review is reversed and this matter is remanded with instructions to that board for further proceedings in accordance with law consistent with this opinion.

*Order reversed and cause*
*remanded with instructions.*

REILLY and BRAME, J.J., concur.

BRAME, J., of the Vinton County Common Pleas Court, sitting by assignment in the Tenth Appellate District.